LEWIS SIMONS, LOUISE SIMONS, SEBASTIAN WERTHMAN
and MRS. SEBASTIAN WERTHMAN, Appellees, v. THE
MASON CITY & FORT DODGE RAILROAD COMPANY,
Appellant.

**Eminent Domain:** APPEAL: PARTIES. Where the notice of con-
demnation proceedings was addressed to and served upon the
land owner and wife, and also his tenant, and the sheriff's jury
was advised of their respective interests and made an award'
to the owner alone, ignoring the tenant, a joint appeal by the
owner and tenant was not necessary, nor was either required to
serve notice of appeal on the other.

**Consolidation of Appeals.** The interests of an owner and tenant
in a condemnation proceeding are not joint but several, and the
overruling of a motion to consolidate their appeals upon a re-
fusal of defendant to agree to separate verdicts was not errone-
ous.

**Dismissal of Appeal.** In a condemnation proceeding the service of
a notice of appeal on the adverse party and the sheriff confers
jurisdiction on the court, and when the appeal has been prop-
erly docketed the appellee cannot have it dismissed or the
award of the jury affirmed, on the ground that the transcript
of proceedings before the sheriff's jury was not filed in the
case until it was reached for trial.

**Docketing Appeal:** FILING TRANSCRIPT: WAIVER. Where the court
obtains jurisdiction by service of the notice of appeal in a con-
demnation proceeding, a general appearance of the parties and
agreements as to the disposition of the case which are made a
matter of record will amount to a waiver of strict compliance
with the statutes relating to docketing and filing a transcript,
and the court's discretion, under such circumstances, to dismiss
and affirm, will not be interfered with.

**Pleadings:** STRIKING FROM FILES. Where appellee's motion on ap-
peal, to dismiss and affirm for failure to file a transcript and
pay the fee was correctly overruled, it was not prejudicial to
strike from the files its answer raising the same question.

**Misconduct of Counsel:** OPENING STATEMENT. Without approving
the practice it is held under the circumstances that no prejudice
resulted from the fact that plaintiff's counsel told the trial jury,

when first called for examination on *voir dire,* the amount of the award by the sheriff's jury.

**Examination of Jury.** A wide latitude is allowed in the examination of jurors for the purpose of enabling litigants to intelligently exercise peremptory challenges, and unless there is want of good faith on the part of counsel or an abuse of the court's discretion the appellate court will not interfere.

**Damages for Right of Way:** EVIDENCE. In estimating the damage to a farm by an appropriation of a portion for right of way purposes, evidence of the amount paid to others per acre for right of way where the tracts were not similarly situated and the consequential damage was not the same, is inadmissible.

**Same.** Inconvenience resulting from the construction of an elevated crossing is not an element of damage in a condemnation proceeding, and error in the admission of evidence relating thereto is not cured by an instruction that the same should not be considered where the instruction did not cover all the evidence on the subject.

**Damages:** INSTRUCTION. An instruction that the jury in a condemnation proceeding should consider every element of annoyance and disadvantage resulting from a construction of the road, which would influence a purchaser in estimating the market value of the property, was erroneous, because it fixed no certain rule for ascertaining the market value, but left the matter open to conjecture.

**Instruction:** EVIDENCE. It is error for the court in its instructions to single out a class of witnesses and give the jury an opportunity to magnify the importance of their testimony by reason of the fact that they were engaged in a particular occupation.

*Appeal from Carroll District Court.*— HON. Z. A. CHURCH, and S. M. ELWOOD, Judges.

MONDAY, APRIL 10, 1905.

THIS is a condemnation proceeding whereby defendant sought to acquire some of plaintiff Simons' land for a part of its roadbed and right of way. The defendant served notice on Lewis Simons and wife and on Sebastian Werthman, notifying them that on March 15, 1902, a jury would be selected by the sheriff of Carroll county to inspect the real

estate, and assess the damages which they would suffer by reason of the construction of the railway. Accordingly a sheriff's jury or commissioners were appointed, and, after inspecting the land, made an award, in which they stated that Simons and wife and Sebastian Werthman, as tenant, had been served with notice, etc., and that, after viewing the premises, they had assessed the damages which the owner thereof had suffered by reason of the appropriation of 33.67 acres of land at $2,525. The railroad company paid the sheriff the amount of this award, and thereafter and within the time allowed by law Simons and wife and Werthman served separate notices of appeal from said award to the district court of Carroll county. These notices of appeal were to the March term of the district court, and were filed in said court on October 20, 1902.

After various proceedings in that court, to which we shall presently refer, trials were had on the appeal by Simons and wife and also on the appeal by Werthman, resulting in a judgment in the Simons case for $4,900, with interest.

In Werthman's case the jury awarded him $24, and on his (Werthman's) motion the verdict was set aside, and a new trial granted. Defendant appealed in each case, and the one now before us is that of Simons and wife against the railroad. The Werthman appeal will be considered in another opinion. — *Reversed.*

*Lee & Robb* and *Healy Bros. & Kelleher,* for appellant.

*Salinger & Korte,* for appellees.

DEEMER, J.— I.   Several preliminary questions are involved on these appeals, which we shall dispose of before going to the merits.

The original notice of condemnation was directed to Simons and wife and Werthman, naming Simons as owner and Werthman as tenant. The sheriff's jury reported that

these parties, as owner and tenant, respectively, had been

**1. Eminent Domain: appeal; parties.** notified of the proceedings and that it had assessed for the owner, by reason of the appropriation of the 33.67 acres of land, the sum of $2,525. Simons and wife, and Werthman served separate notices of appeal from this finding, and neither made the other a party to his notice, nor did he serve the other with notice. It is contended that the award made by the sheriff's jury was joint; that the notices of appeal should have been joint; and that, in any event, the notice by Simons and wife should have been served upon Werthman, and that Werthman's notice should have been served upon Simons and wife. If the award was joint, doubtless appellant's contention in this respect should be sustained; but we do not think this award should be so construed. The sheriff's jury was clearly advised that Simons and wife were the owners of the land, and that Werthman was a tenant; that they so understood clearly appears from their report; and it is just as clearly shown that the award was to the owner, as distinguished from the tenant, and that they did not award the tenant anything. Under such circumstances we do not think a joint appeal was necessary, nor are we inclined to hold that either should have served notice upon the other. *Ruppert v. R. R.,* 43 Iowa, 490; *Rimback v. Comms.* (N. J. Sup.), 41 Atl. Rep. 699; *Railway v. Ellis* (Kan. Sup.), 33 Pac. Rep. 478.

Neither party was bound to join the other in his appeal. The award was not joint, and either or both could appeal therefrom. The owner had no legal concern in an appeal taken by his tenant from an award in the tenant's favor, or from a finding that he was not entitled to anything. Nor was the tenant in any way concerned or interested in the owner's appeal.

II. Before the trial began, defendant's counsel asked that the two appeals be consolidated and tried together, to the end that a single joint award might be made. To this counsel for Simons and Werthman agreed, provided separate ver-

dicts or findings be made as to each appellant. To this de-
fendant's counsel would not agree and the mo-
tion to consolidate was thereupon overruled. In
this there was no error. The interests of these
parties was not joint, but several. One was the owner of the
fee and the other had a leasehold interest, and an award to
one would in no manner affect or prejudice the other's rights.
There was no error in the ruling on the motion to consolidate.
*Railway Co. v. Ellis, supra.*

2. CONSOLIDA-
TION OF
APPEALS.

III.    The notices of appeal were served on the 18th
day of March, 1902. Neither of the appellants filed said
notices, or any other papers, with the clerk of the district
court until about October 20th of that year, at which time
Simons filed a transcript of the proceedings before the sheriff
and also a complaint. The March term of the district court
of Carroll county convened March 31, 1902. At the be-
ginning of that term the parties appeared by counsel, and
the cases were entered upon the judge's calendar. After
entry they were by agreement set down for trial on April
15th. Thereafter each was continued by agreement. These
agreements were evidenced, first, by memoranda entered by
the judge upon the court calendar, and, second, by entries
made therefrom by the clerk upon the regular court records in
cases which were properly entitled.

The next term of said district court convened in Sep-
tember, and on the 15th of that month, which was the first
day of the term, counsel for the respective parties upon a call
of the docket informed the judge that a certain case appear-
ing thereon under the title of Simons against the defendant
herein had been disposed of, was dead, and had been put
upon the court docket by mistake; that these appealed cases
or the Simons appeal should have been put upon the docket
instead of the old one, which had been disposed of (it being
an equity case, brought by Simons against the railway, an
action entirely independent of this appeal), and that the
docketing of the old case was intended to cover the condem-

nation case under the same title; and by agreement of counsel the court was requested to transfer the old equity case to the law docket as and for the appeal in the condemnation proceedings, and then and there by agreement the causes were assigned for trial during the September term of court. The appeal in the Werthman case was entered upon the appearance judgment and execution docket on the 7th day of September, 1902. This was done by the clerk from data found on the judge's calendar and from the entries in the court records. The old equity case was entered upon the appearance judgment and execution docket May 20, 1902; and what were known as the joint appeals of Simons and Werthman were entered on this docket on September 19, 1902, at the request of defendant's counsel.

The entries of the cases or rather of the titles of the cases, on the judge's calendar, were in the handwriting of the clerk, as also were all the entries upon the court records proper.

The September term convened, we have said, on the 15th day of that month, and on the 19th defendant obtained a transcript of the proceedings before the sheriff, filed it in the district court, paid the docket fee, had the case docketed as a joint appeal as above indicated, and then moved that the appeals be dismissed because the appellants had not at any time filed either notices of appeal or a transcript of the proceedings before the sheriff's jury, and had not had the case docketed as provided by law.

After hearing the testimony introduced in support of and in resistance thereto, the motion was overruled. It is agreed that the sheriff made no transcript until it was called for by the defendant's attorneys, and that at their request he made and filed one on September 19, 1902.

Defendant now stoutly insists that its motion to dismiss or affirm should have been sustained.

The case was not tried until November 24, 1902, and at that time there was not only a transcript on file, but also a

written complaint made by the plaintiff, and the notices of appeal.

Section 2009 of the Code provides for appeals from assessments by a sheriff's jury, by the service of a notice in writing upon the adverse party and the sheriff, within thirty days after the assessment has been made, that such an appeal has been taken. The sheriff is thereupon required to file a certified copy of the appraisement, and the court is to try the same as an action by ordinary proceedings.

Section 3660 provides that in appeals from inferior tribunals the appellant shall cause the case to be docketed by noon of the second day of the term to which the appeal is returnable, and in case of his failure to do so the appellee may procure the case to be docketed, and thereupon will be entitled to have the judgment of the court below affirmed, or to have the case set down for hearing on its merits, as he may elect, and the provisions of the Code with reference to appeals from justices' courts are made applicable " so far as they may be."

Section 4559, relating to appeals from justices' courts, provides that, if the appellant fails to pay the docket fee and have the case docketed by noon of the second day of the term at which the appeal should properly come on for trial, unless time is extended by the court, appellee may do so, and have the judgment below affirmed, or have the case set down for trial on its merits, as he may elect. Provision is also made to the effect that if appellant, before noon of the next day after an affirmance has been granted, appears and makes a sufficient showing of merits and proper excuse for his default, and pays the clerk the docket fee, the court, in its discretion, may set aside the order of affirmance, and cause the case to stand for trial at that term, unless appellant asks a continuance, etc.

These statutory provisions are the basis for defendant's claim that the appeal should have been dismissed, or the award affirmed.

It will be observed that the appeal is taken and perfected by the service of notice on the adverse party and the sheriff. From that time down until the final disposition of the case it is in the court to which the appeal is taken. *Bank v. City,* 118 Iowa, 84; *City v. Loan Co.,* 122 Iowa, 629.

3. Dismissal of Appeal.

There is no statute which expressly requires the filing of a transcript in order to give the district court jurisdiction; and such a document is necessary only for the purpose of furnishing the data for the docketing of the case, or to show the trial court what was in issue in order that it may intelligently submit the issues and render judgment for the proper party. If the case properly gets upon the docket, even in the absence of transcript, and without the payment of the docket fee, appellee cannot have the appeal dismissed or the judgment or award affirmed under the statutes relied upon.

Assuming that the court acquired jurisdiction by the service of notice of appeal, the only object in docketing the case is to prevent delay and to secure a trial in regular order. A transcript is not really required until the case is reached for trial. This has been the uniform holding of this court. *Robertson v. R. R.,* 27 Iowa, 245; *Bank v. City,* 118 Iowa, 84; *City v. Loan Co.,* 122 Iowa, 629; *City v. R. R. Co.,* 120 Iowa, 259; *Vasey v. Parker,* 118 Iowa, 615.

This being true, if the case was docketed without the payment of the fee, and without a transcript, the statute has been complied with.

We are in grave doubt as to whether or not an entry of a case on the judge's calendar, and the carrying of entries therefrom into the court records or journal, without more, constitutes a docketing within the meaning of the statute. Doubtless the case should be entered upon the appearance docket or the combined appearance and judgment docket and fee book. From this it goes in regular order onto the judge's calendar, and under its proper title in this book the judge makes his memo-

4. Docketing Appeal: filing of transcript; waiver.

randa, which are finally journalized upon the regular court records. Even if the transcript had been filed, there was no necessity for entering it upon the appearance docket, for such an entry was not essential to its filing. There was no entry in the appearance docket, save in the old equity case, until just before the September term, and it was then agreed between counsel, as we understand it, that the entry therein of the old case should stand as an entry of this particular case of Simons against the defendant railway.

Moreover, at the March term, to which the case was appealed, both parties appeared by counsel, and agreed to a date for the trial of the case, and afterwards consented to a continuance. These appearances were general, and the agreements were carried into the court records, so that they do not rest in parol. The motions to dismiss and affirm were not filed until more than three days after the first day of the second term after the appeals were taken. Before the motions were ruled upon, plaintiff filed an affidavit of merits, made an excuse for his not having filed the transcript, offered to pay the docket fee and to file a transcript, and did actually file a transcript before any ruling was made on the motion to dismiss.

In view of all facts, we think there was a clear waiver on the part of the defendant of a strict compliance on plaintiff's part with the provisions of the statute with reference to the docketing of the case and the filing of the transcript.

The case was in the district court. Defendant, by its counsel, recognized it as being properly in that court, and on the judge's calendar for both the March and the September terms of court. Agreed entries were made in the cases at various times. The transcript was filed long before it was needed for any purpose connected with the trial.

An arrangement existed between plaintiff's counsel and the clerk of the district court whereby credit was given for docket fees in cases in which they were interested; and, even if there had been no such arrangement or agreement, failure

to pay the docket fee alone would not have been ground for the dismissal of the appeal. *Vasey v. Parker,* 118 Iowa, 615.

The court having jurisdiction of the case and of the parties, general appearance on the part of each, and agreements from time to time as to the disposition of the case, which agreements were entered upon the proper records of the court, amounted to the waiver of an entry of the case upon the appearance docket. *Robertson v. R. R. Co.,* 27 Iowa, 245; *Squires v. Millett,* 31 Iowa, 169; *Bacon v. Black,* 38 Iowa, 162; *Waldron v. Waldron,* 15 Sup. Ct. 383, 39 L. Ed. 453; *In re Brady,* 70 Minn. 437 (73 N. W. Rep. 145.) The following cases involving kindred statutes also give support to our conclusions: *Mobile v. Dale,* 61 Miss. 206; *Hinterminster v. Brady,* 70 Minn. 437, (73 N. W. Rep. 145); *Waldron v. Waldron,* 156 U. S. 361 (15 Sup. Ct. 383, 39 L. Ed. 453); *McCombs v. Johnson,* 47 Mich. 592 (11 N. W. Rep. 400); *Phillips v. Hood,* 85 Ill. 450; *Foute v. New Orleans,* 20 La. Ann. 22.

Assuming that section 4559 of the Code applies to the case, as defendant contends, the trial court had a discretion in the matter of setting aside such an order as the defendant requested upon proper and timely application therefor. Vested with such discretion, it might, upon a proper showing, refuse, under the latter part of this section to grant it. Such being the case, we should not interfere with this discretion. *Stevenson v. Caldwell,* 14 Mont. 245. (36 Pac. Rep. 185.)

IV. The points we have just been discussing were raised in an answer filed by the defendant, which was stricken on plaintiffs' motion. There was no error in this ruling. The statute does not provide for such a pleading, and, even if it did, the paper filed did not set forth facts showing want of jurisdiction in the district court. But, if wrong in this, the entire matter was submitted to the court on the motion to dismiss or affirm,

5. Pleadings: striking from files.

and was correctly decided; therefore no prejudice resulted. *City v. Investment Co.,* 122 Iowa, 633.

V. In examining jurors on their *voir dire,* plaintiffs' counsel stated to those first called into the box the amount of the award by the sheriff's jury. This is complained of.

6. MISCONDUCT OF COUNSEL: opening statement. There is no statute which prohibits mention of the matter; and while, perhaps, it was not commendable in counsel to do so, no cause for reversal is shown. Moreover, it does not appear that this statement was made in the presence of all the jurors, or that those to whom it was made were not excused during the trial.

The jury which tried the case was instructed to look to the evidence for the facts, and we must assume that it tried the same on the evidence adduced. It is manifest that no prejudice resulted from the statement. *Pierce v. Brennan,* 88 Minn. 50 (92 N. W. Rep. 509.)

In the cases relied upon by appellant the award of the jury was introduced in evidence, or otherwise made important by the trial court in such a manner as to show prejudice. Here counsel stated, when objection was made, that he was simply identifying the case; and for this purpose the trial court held the statement proper. There was no prejudical error here. We are not to be understood, however, as approving the practice.

VI. Counsel also asked each of the jurors called into the box if the finding of the sheriff's jury or of any member thereof would have any weight with him as a juror in the case, or would in any manner stand in his way

7. EXAMINATION OF JURY. in finding the value of the land under the evidence. Counsel stated, when objection was made, that this line of examination was for the purpose of advising his client as to how to exercise his peremptory challenges.

A wide latitude is necessarily allowed counsel in examining jurors for this purpose, and must, of necessity, be left to the sound discretion of the trial court. The exact situa-

tion cannot be reproduced in cold type, and many things must be taken into account by the trial court which cannot be made of record or considered here.   Consequently, our rule has been not to interfere in such matters save where there has been a want of good faith on the part of counsel, or a manifest abuse of discretion on the part of the trial court. *Foley v. Cudahy Co.,* 119 Iowa, 251, and cases cited.

No such showing is made in this record as would justify us in reversing the case upon this ground.

VII.   Plaintiff was permitted, over objections of the defendant, to show what the defendant railway company had paid to others per acre for rights of way over their land.

8. DAMAGES FOR RIGHT OF WAY: evidence.

The tracts were not similarly situated or improved, the railway did not cross them in the same way, and the consequential damages were not and could not have been the same in the several instances; and yet the price paid, considered with reference to the number of acres taken in each case, was offered as a test whereby the jury might fix the price per acre to be paid for plaintiffs' land.   In one case the whole number of acres in the tract was 90, and the number of acres taken 6, leaving 60 acres on one side of the tract and approximately 20 on the other.   In another there were 680 acres in the tract, and the right of way took out nearly 15.   The witness who gave evidence as to the price per acre paid for the land testified that he included all damages done to the entire farm.   In another case the farm consisted of 240 acres, and the railway took 27.   The railway ran diagonally through this tract, leaving land on either side thereof, and the price paid, from which the witness estimated the sum per acre, included all damages done the entire farm.   In the instant case plaintiff owned 134 acres, and the railway took 33.67 off from one corner thereof.   There was no division of the land by the right of way, and the consequential damages were not the same as in the other cases referred to.

The overwhelming weight of authority is to the effect

that such testimony as to the amounts paid for other tracts is inadmissible. *King v. R. R. Co.,* 34 Iowa, 458; *Cummins v. R. R.,* 63 Iowa, 397; *Peoria v. Peoria R. R.,* 146 Ill. 372 (34 N. E. Rep. 550, 21 L. R. A. 373); *Brunswick v. Mc-Laren,* 47 Ga. 546; *Presbery v. R. R.,* 103 Mass. 1; *Fall River v. City,* 110 Mass. 428; *Providence v. City* (Mass.), 29 N. E. Rep. 56; *Spokane v. Lieuallen,* 3 Idaho, 381 (29 Pac. Rep. 854); *Penn R. R. v. Ziemer,* 124 Pa. 560 (17 Atl. Rep. 187); *Laing v. R. R.,* 54 N. J. Law, 576 (25 Atl. Rep. 409, 33 Am. St. Rep. 682); *Lyon v. R. R.,* 167 Ill. 527 (47 N. E. Rep. 775.)

Indeed, there are but two cases which seem to hold to the contrary. They are *Wyman v. Company,* 13 Metc. 316, which is fully explained and limited in the Presbery Case, *supra,* and *Langdon v. New York* (N. Y.), 31 N. E. Rep. 98. But the latter was not a condemnation case. In New York the rule in such cases is in accord with that in other States. See *In re Thompson,* 14 L. R. A. 52, 127 N. Y. 463, 28 N. E. Rep. 389.

There are many reasons which might be advanced in support of this almost, if not quite, universal rule. In the first place, such sales are almost always in the nature of a compromise. The landowner, on the one side, may force a sale; and the railway company, on the other, must have the land, even though it costs more than its value. Again, the circumstances and surroundings are necessarily dissimilar, and the amount paid is not only the value of the land actually taken, but also the damages done to the entire tract, depending upon the exigencies of the location of the right of way, the number of acres in the estate, and other facts peculiar to the particular case. All incidental damages are included, and these, of course, should not be taken into account in fixing the acreage value in the market. Evidence as to damages paid in one case would certainly not be admissible in order to determine the damages done in another; and yet this is what appellee is contending for here when the matter is

reduced to its final analysis. Such testimony does not, after all, go to the market value of the land, except incidentally, and it is not a reasonable or fair test of market value. We need not further elaborate this point. Suffice it to say that both reason and authority support appellant's contention. The evidence should not have been received, and its introduction was manifestly prejudicial.

VIII. The defendant contemplated the construction of an overhead bridge crossing a highway which ran along one side of plaintiff's land. This was for the purpose of getting over another railway track. Plaintiff was per-

9. Same.

mitted over defendant's objections to testify that access to the town of Carroll was interfered with by this overhead bridge. Other witnesses testified that in estimating plaintiff's damages they took into account this overhead structure, because it made the highway dangerous, and would frighten teams. This evidence was clearly inadmissible. *Fleming v. R. R.,* 34 Iowa, 353; *Gear v. R. R.,* 43 Iowa, 83; *Watts v. R. R.,* 39 W. Va., 403 (19 S. E. Rep. 521, 23 L. R. A. 674, 45 Am. St. Rep. 894.)

It is contended by appellee that the trial court cured this error in an instruction in which it told the jury that plaintiff could not recover for any inconvenience which affected the public generally, as well as the owner, and that being obliged to drive under the overhead crossing was such an inconvenience. We doubt if this sufficiently cured the error in the admission of the testimony; for it did not cover all the matters to which the witnesses had referred — for instance, the frightening of teams. Enough has been said to indicate that upon a retrial this testimony should not be received.

IX. In the seventh instruction the trial court told the jury that it was proper for them to take into account every element of annoyance and disadvantage resulting from the

10. Damages:
instruction.

construction of the railroad which would influence an intending purchaser in making an estimate of the market value of plaintiff's property. This, we

think, was error, in that it led the jurors into an unlimited field of conjecture and speculation. It furnishes no rule for the assessment of damages and gives no certain test for ascertaining the market value. It left the matter open to the caprices and whims of each individual juror. *Jennison v. Gray,* 29 Iowa, 537, lends support to this view.

X. Instruction No. 17 reads as follows: " You are instructed that witnesses who are engaged in farming in the neighborhood of the land in dispute, and who are farmers

11. INSTRUC-
TION:
evidence

by occupation, is a question which you may consider, and whether they have a better opportunity, from their occupation, of estimating the injury and inconvenience occasioned to his farm by the construction of this road than men engaged in other occupations, is for you to consider." Unfortunately for this instruction, most, if not all, of plaintiff's witnesses were farmers living near the land, and few, if any, of the defendant's were of that occupation. That it is error for a court to thus single out a class of witnesses or of testimony, and give the jury an opportunity to magnify its or their importance, is fundamental. *Bever v. Spangler,* 93 Iowa, 576; *Carroll v. R. R.* (Iowa), 84 N. W. Rep. 1035.

The instruction should not have been given. Thereunder a jury might very well have felt justified in giving more weight to the testimony of a farmer as to values, simply because of his occupation or residence, than to that of another witness not of that occupation, although the latter may have had more or better knowledge of the subject than the former. It is always dangerous to give such instructions, and that in this case it may have been exceedingly prejudicial to the defendant is not open to debate.

For the errors pointed out, the judgment must be and it is *reversed.*