**UNITED STATES v. FOSTER et al.**
**SAME v. BUESCHER.**

Nos. 12312, 12313.

Circuit Court of Appeals, Eighth Circuit.

Nov. 4, 1942.

---

4

John F. Cotter, Atty., Department of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Bailey C. Webber, Sp. Atty., of Ottumwa, Iowa, and Vernon L. Wilkinson and Frank J. Dugan, Attys., Department of Justice, both of Washington, D.C., on the brief), for appellant.

John Hale and Don K. Walter, both of Burlington, Iowa, for appellees.

Before GARDNER, WOODROUGH, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

These two proceedings were brought by the United States as plaintiff to condemn two parcels of land for an ordnance plant in Des Moines County, Iowa. The two separate proceedings were consolidated for trial, and are consolidated on appeal.

In No. 12,312, the land condemned, known as the Foster tract, consisted of a 235-acre farm located six miles west of Burlington, Iowa. On January 21, 1941, the Government, pursuant to Section 258a, 40 U.S.C.A., filed a declaration of taking and deposited $35,000.00, purportedly "ascertained by the acquiring authority to be just compensation." There were located on this tract a dwelling house of twelve rooms, approximately 75 years old, two barns, and other improvements. The jury returned a verdict finding the just compensation for the taking of the lands to be $42,000.00.

In No. 12,313, the land condemned, known as the Buescher tract, consisted of 132.52 acres out of a total acreage of 172.52 acres. Of the land taken, thirty-five acres was pasture and the remainder tillable though somewhat broken by gullies. It adjoins the Foster tract on the north. The declaration of taking filed was similar to that filed in connection with the taking of the Foster tract and recited that the value of the tract was ascertained to be $22,450.00. This was an improved farm, with a good, modern, five-room dwelling house, about eleven years old, a large barn, a chicken house, tool house, garage, windmill and silo. The dwelling house was equipped with electric lights, hot air furnace and a water supply. The verdict of the jury fixed the just compensation for the taking of the land at $31,250.00.

Expert witnesses called by defendants valued the Foster property at from $42,300.00 to $47,000.00. On redirect examination they increased their estimates of value to from $48,000.00 to $50,000.00. Two expert witnesses for the Government valued the property at from $21,625.00 to $23,270.00. Defendants' expert witnesses estimated the value of the Buescher tract at from $34,400.00 to $39,000.00, while witnesses for the Government estimated the value of the property at from $13,500.00 to $14,000.00.

On redirect examination, witnesses for defendants testified as to the value of the Foster land and then stated an added value for industrial purposes. Objections to this testimony and motions to strike were interposed by the Government, which were overruled by the court. Counsel for defendants were permitted, over objection, to interrogate witnesses for the Government

as to whether they had considered certain sales of nearby land made to the Government for the ordnance plant. The questions specified the price per acre and the increase over the preceding sales of the same lands. The witnesses testified that they had not and would not consider such sales because they were not voluntary as the specific land had been designated as a site by the Government and the Government had to acquire it, and some of the prices paid were "far too high."

As to each tract, over appropriate objection, the court admitted in evidence the declaration of taking, together with evidence of the deposit of the purportedly "ascertained" just compensation.

The Government has appealed and seeks reversal on substantially the following grounds: (1) the court erred in permitting cross-examination of witnesses for the Government as to prices the Government had paid for other nearby lands; (2) the court erred in permitting evidence as to alleged value and adaptability of the land for ordnance plant purposes; (3) the court erred in admitting in evidence the declaration of taking containing the purported "ascertainment" of just compensation.

■■■ On cross-examination, certain witnesses for the Government testified that in arriving at the value of the lands taken they had not taken into consideration sales to the Government. Further cross-examination, over objection, developed that in 1938, a sale of the Hockett farm had been made for $17,500.00, and a sale of the same farm had been made to the Government in 1941 for $31,720.00. Testimony of the price paid by the condemnor for other tracts is not admissible. Simons v. Mason City & Ft. D. R. Co., 128 Iowa 139, 103 N.W. 129; United States ex rel. v. Reynolds, 5 Cir., 115 F.2d 294. In Iowa, evidence of sales of any kind is inadmissible as substantive evidence of value, but on cross-examination, it is held that a witness may be examined as to his knowledge of sales in the vicinity in order to test his qualifications as an expert. Watkins v. Wabash R. Co., 137 Iowa 441, 113 N.W. 924. Defendants do not seriously contend that the challenged evidence was, under the Iowa rule governing the admissibility of testimony in proceedings of this character, admissible, but they argue that the procedure adopted by Government counsel justified this method of examination. Counsel for the Government cross-examined witnesses for defendants as to other sales, quoting prices per acre. This, we think, was permissible as being proper cross-examination. This constituted no departure from the approved procedure and can not be said to warrant any departure by counsel for defendants. The cross-examination of Government witnesses, however, went into a forbidden field because it examined as to the prices paid by the condemnor for other tracts taken for the same project. The doctrine of estoppel to urge error can not justify extending the privilege of cross-examination into forbidden fields. The error, we think, was prejudicial.

■■■ In determining the value of land taken by eminent domain, the jury may consider all uses to which it is adapted and might be put, and may award compensation upon the basis of its most advantageous and valuable use. To warrant the admission of testimony as to value for purposes other than that for which it is actually used, however, regard must be had for the existing conditions and wants of the community, or such as may reasonably be expected in the immediate future. The uses considered in fixing value must be so reasonably probable as to have an effect upon the present market value of the land and a speculative value can not be considered. Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 709, 78 L.Ed. 1236. In order to warrant taking into consideration claimed special adaptability in fixing value, it must appear that the market value has been thereby enhanced. As said by the Supreme Court in Olson v. United States, supra:

"Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth."

A witness for the defendants, on redirect examination, testified that U. S. Highway 34 lies to the north of the Foster farm about a mile or two miles, and that there is a paved U. S. highway at its west. Road No. 3 is west and south of it, and U. S. Highway 61 is east and south. There is a municipal dock at Burlington, used for

transportation of freight on the Mississippi River. At Fort Madison, eighteen miles south of Burlington, there is the Santa Fe Railroad. At Burlington, there are the Rock Island and the C. B. & Q. railroads. The C. B. & Q. runs in an easterly and westerly direction, north of the Foster tract. A branch line runs from Burlington southerly to St. Louis, while a branch line of the Rock Island runs northward from Burlington to St. Paul. This witness, on direct examination, had placed the value of the Foster farm at $43,025.00. He was then cross-examined by counsel for the Government with reference to the topography of the land, about standing timber that had been removed from it, and about other sales. On re-direct examination, no reference whatever was made to the matter touched in his cross-examination nor was there any claim that the witness had made a mistake in his direct examination; but counsel for defendants cross-examined the witness as to his own direct testimony and in effect impeached his own witness by showing that he had not taken into consideration certain alleged elements of value and testifying that such elements would add $5,000.00 to his valuation. It was on this so-called re-direct examination that the witness, over objection, was permitted to testify with reference to the alleged prospective value for industrial purposes. On re-cross examination, he was interrogated as follows:

"Q. You know, Mr. Naumann, as a practical real estate man, except for the location of the Iowa Ordnance Plant, there was never consideration of the land in the Foster farm as other than a farm property? A. Up to that time it wasn't. Burlington wasn't expanding.

"Q. In other words, the Iowa Ordnance Plant brought in by the Government is your only basis for saying this is an industrial site? A. That is right. Under present circumstances and conditions. If the city would ever expand naturally, that isn't far out.

"Q. But up to the time the Iowa Ordnance Plant came in there, the city had not expanded and wasn't going out in that direction, was it? A. It was going in that direction.

"Q. For industrial sites? A. No, sir.

"Q. And when you appraised that farm as a farm, you were considering its reasonably best possible use, weren't you? A. For farming.

"Q. For farming? A. As a farm. Q. And you know, Mr. Naumann, except for the Iowa Ordnance Plant which was located there, there wasn't the remotest probability of an industrial site being located on this particular property? A. Not at the present time, there wasn't.

"Q. I said except for the Iowa Ordnance Plant? A. That is right."

Counsel for the Government then moved that the testimony of the witness with respect to his opinion of the value of any of the property for industrial purposes be stricken. The motion was denied. In a similar manner the witness Wischmeier was re-examined with reference to the possible value of the property for industrial purposes, and on re-cross-examination stated that his added valuation for industrial purposes was based upon the fact that the Iowa Ordnance Plant had been located in that vicinity. A motion to strike his testimony as to this alleged added value was also denied. We do not think this testimony was admissible. Olson v. United States, supra; United States v. Boston, etc., Canal Co., 1 Cir., 271 F. 877. The prospective value of the property was purely speculative. So far as appears from the testimony, the only industrial use ever contemplated for this property was that for which the defendant was appropriating it. The value of the land taken to the party taking it is not the test but its value to the owner or the loss caused to him by its taking. The necessities of the public can not be taken into consideration in fixing the value of the property taken. United States v. Becktold, 8 Cir., 129 F.2d 473.

Another contention of the Government is that the court erred in admitting in evidence the declarations of taking. Section 1 of the Act of February 26, 1931 (40 U.S. C.A. §§ 258a–258e) authorizes the Government in the exercise of its power of eminent domain to file, at any time before judgment, a declaration signed by the acquiring authority declaring that the lands described in the petition for condemnation are thereby taken for the use of the United States. The Act further provides that,

"Upon the filing of said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title * * * shall vest in the United States * * *, and said lands shall be deemed to be condemned and taken for the use of the United

States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein. * * *

"Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding."

Upon the filing of the declarations and the deposit of the estimated amount of compensation, title becomes vested in the Government and the funds deposited in effect take the place of the property taken. The owner, while divested of the title and right of possession, is vested with the right to just compensation which "shall be ascertained and awarded in said proceeding and established by judgment therein." In the instant case, the declarations contain recital that "the sum of money ascertained by me as just compensation for the land is set forth in Schedule 'A' annexed to and made a part of this declaration." It is observed that the Act specifically provides that "said compensation shall be ascertained and awarded in said proceeding and established by judgment therein." Nowhere in the Act is the Secretary of War authorized or directed to "ascertain" the just compensation for the land. That, under the Constitution, the property owner has a right to have determined in a judicial proceeding. In this regard all the Secretary is authorized to do is to file a declaration that the lands are taken for the use of the United States, by what authority under which and the probable use for which they are taken, a description of the lands, a statement of the estate or interests taken, a plan showing the lands taken and "a statement of money estimated" by him to be the just compensation for the lands taken.

In Ramming Real Estate Co. v. United States, 8 Cir., 122 F.2d 892, 893, a similar declaration was offered in evidence "'for two purposes: First, to show when the taking occurred, the date of the taking. Secondly, judicial admission on the part of the Government as to the estimated value that it placed on this property on the day of the taking.'" Counsel for the Government in that case offered no objection to the offer for the purpose of showing the date of taking, but objected to the offer as a judicial admission on the part of the Government. The objection was sustained and we affirmed on the ground that it was not admissible as a judicial admission on the part of the Government.

In the instant case, there was no limitation on the offer and it is urged that these declarations were admissible as admissions against interest. If these declarations by the Secretary of War were made in the performance of his duty and within the scope of his authority, it may well be that the Government would be bound. City of Chicago v. Greer, 9 Wall. 726, 19 L.Ed. 769. The statement in these declarations, however, to the effect that the Secretary of War had "ascertained" that the sum of money therein stated was just compensation, was gratuitous and not within the scope of his official duties. While officers are presumed to have acted within their authority, statutes delegating powers to public officers must be strictly construed, and all persons dealing with public officers are bound to know that acts which are within the apparent but in excess of the actual authority of officers will not bind the Government. Whiteside v. United States, 93 U.S. 247, 23 L.Ed. 882. "Ascertain" means: "To make certain, clear or definitely known; find out with certainty; determine; insure as a certainty." New Century Dictionary. "Estimate," on the other hand, means: "To set a value on or appraise." "To form an approximate judgment or opinion regarding the value." "Calculate approximately." "To form an opinion of." New Century Dictionary. The declaration implies that the Secretary has done more than make an estimate. It declares that the sum of money has been "ascertained" by him to be just compensation, implying that the amount as stated is not his own estimate, but that by some process it has been definitely ascertained and determined. We think the Government is not bound by such a declaration and we repeat that the compensation to be paid to the property owner is not, under this Act, to be ascertained by the Secretary of War, but by a jury.

The judgments appealed from are therefore reversed and the causes are remanded to the trial court with direction to grant a new trial.