THE PEOPLE OF PUERTO RICO, ETC., Plaintiff, Appellant and Appellee, *v.* ROBERTO M. COLÓN ET AL., Defendants and Appellees; ROBERTO M. COLÓN, Appellant.

No. 10505. Argued January 9, 1952.—Decided June 26, 1952.

</div>

*Víctor Gutiérrez Franqui, Attorney General,* and *Clemente Pérez Martínez* and *Alejandro Romanace, Assistant Attorneys General,* for appellant-appellee. *Orlando J. Antonsanti* and *René Benítez* for appellee-appellant.

MR. CHIEF JUSTICE TODD, JR., delivered the opinion of the Court.

Upon filing this suit to condemn 3.037 cuerdas of land equivalent to 11,936 square meters, belonging to Roberto M. Colón, the People of Puerto Rico deposited in court the amount of $9,863.33 as just compensation. The defendant alleged that the parcel was worth $96,868.13 and, also, that it had suffered damages in the amount of $35,000 as a direct consequence of the taking. The case was heard and the Court of Eminent Domain decided that the area of the parcel was 12,402.05 square meters and its value $24,804.10 (that is, $2 a square meter), as well as that plaintiff should pay $3,000 as severance damages to the main property where defendant's residence was located. It entered judgment ordering plaintiff to pay to the defendant the difference between the amount deposited, $9,863.33, and $27,804.10, plus legal interest.

Feeling aggrieved by the judgment, both parties appealed and the appeals were consolidated. We consider first plaintiff's appeal.

Plaintiff assigns two errors to the effect that the lower court erred in appraising the parcel taken at the rate of $2 per square meter by using a method inapplicable in cases of condemnation of strips of land to be used in the construction of widening of public highways, and in not admitting in evidence the income tax return of Roberto Colón Manufacturing Co., filed in 1947 to challenge the credibility of Roberto Colón as a witness.

■■■ Plaintiff bases the first assignment on three different grounds. It argues that the court erred in admitting as a similar sale that of a parcel of 877 square meters at the rate of $4 per square meter, inasmuch as because of the difference in area in connection with the parcel taken, which has an area of 12,402.05 square meters, it could not serve as a basis to fix the market value of the latter. Although it cites our decision in *People* v. *Carmona*, 70 P.R.R. 292, which is contrary to its views, it claims that the same was modified by our per curiam decision in *People* v. *Soc. Agrícola Mario Mercado e Hijos*, decided November 17, 1950.

We must make it clear that said sale of a parcel of 877 square meters was not the only sale admitted in evidence and taken into consideration by the court. On the contrary, various similar sales were offered and admitted and in referring thereto in its opinion the court stated:

"Both plaintiff's and defendant's evidence comprised transactions of parcels fluctuating between properties of 500 cuerdas and parcels of 7,000 meters. We have analyzed all of them as a whole (all those we admitted), to make a last appraisal of the effect thereof within this case, taking also into consideration the remainder of the evidence heard and, therefore, all the considerable factors and tests of valuation it raised. We think that the transactions offered in evidence by the parties of properties of a smaller as well as of a larger area, offer *us*, by way

of contrast, *if not because of their similar area and other concurrent factors, enlightenment and orientation* as to the fair and reasonable market value on the date of the taking. *All have been duly taken into consideration by the Court.* We do not consider a good practice to follow blindly any of them in particular. Each must be given the probatory value it deserves together with the other evidence heard. . . ." (Italics ours.)

And upon referring to the parcel of 877 square meters it said:

"The area of the parcel involved in this transaction is 877 square meters and that of the parcel taken, 12,402.05 square meters, but this by itself did not render this transaction inadmissible. We think that the transactions offered here by the People of Puerto Rico involve a greater disparity, save one, than the one with which we are concerned. However, even they offer by way of contrast elements of judgment which aid the court to make an equitable appraisal in this case."

Our decision in *People* v. *Soc. Agrícola Mario Mercado e Hijos, supra,* to the effect that the lower court had not erred in refusing to admit as evidence of similar sales, sales of lots fluctuating between 129 and 1800 square meters, in a suit to condemn a parcel of 20,000 square meters, did not modify *People* v. *Carmona, supra,* wherein we held that the lower court did not err in admitting evidence of similar sales of parcels of 200, 400 and 1000 square meters in connection with the condemnation of a property of 1.90 cuerdas, as demonstrated by the subsequent decisions of *People* v. *Heirs of Rabell,* 72 P.R.R. 536 and *Housing Authority* v. *Viera,* 72 P.R.R. 683. In the latter cases it was made clear that said sales were inadmissible in evidence when the parcels involved in so-called similar sales, not only because of their area but also because of their topography and situation, were not actually similar to the land taken.

There is not a steadfast rule as to the point in question and in each case the court must exercise a sound discretion which we shall leave undisturbed unless a clear abuse thereof

is shown, which is not the case here. *P. R. Housing Authority* v. *Valldejuli*, 71 P.R.R. 600 and see Annotations, 118 A.L.R. 869, 883 *et seq.* and 174 A.L.R. 386, 390 *et seq.*

The second question raised by the plaintiff in this assignment is to the effect that the court erred in admitting in evidence the sale of a parcel of 7,305.43 square meters at the rate of $2.50 per square meter, on the ground that said sale was not spontaneous.

It appears from the evidence that the Caribe Motors Corporation owned a building located on a lot of the People of Puerto Rico, in Puerta de Tierra, which it built to possess and use during twenty years at the end of which period said building would revert to the benefit and use of the People. During the war the army condemned the aforesaid building and Caribe Motors, needing space to accommodate its vehicles and being compelled to move, had to purchase a lot it was offered. José M. González, one of the members of the Board of Directors of Caribe Motors, leased to the latter the lot of 7,305.43 square meters for $1 a year, the corporation binding itself to pay the land taxes. Under the conditions of the lease contract, the corporation could exercise the option to purchase said lot and in the event it did not, all the improvements made thereon would remain for the benefit and use of the lessor. Caribe Motors constructed on said lot a building which cost it approximately $37,000 and later acquired it at the rate of $2.50 per square meter.

We must stress the fact that plaintiff's only reason for challenging this sale is because apparently it lacked spontaneousness, it being accepted that it was contemporaneous and of similar lands. Arguing this assignment the plaintiff claims first, that the Caribe Motors having been led to execute a lease contract with option to purchase in 1942 because the army had condemned its building, and second, the option to purchase having been exercised in 1946, ratified in 1947, after constructing in the leased lot a $37,000 build-

ing, which would have reverted to the lessor, said corporation was not in a position to discuss the price of $2.50 per square meter fixed in the contract. It argues, furthermore, that said parcel was acquired for urgent reasons as a result of the last war and, therefore, its sale can not be considered as a voluntary transaction.

We have held that in condemnation suits contemporaneous sales of similar lands are admissible in evidence provided that such sales are free and voluntary. *People* v. *Lamboglia,* 70 P.R.R. 773; *People* v. *Huyke,* 70 P.R.R. 720; *People* v. *Carmona, supra; P. R. Housing Authority* v. *Valldejuli, supra; People* v. *Heirs of Rabell, supra.*

The case of *P. R. Housing Authority* v. *Valldejuli, supra,* involved the question of whether contemporaneous purchases of similar land by the condemnor itself were admissible in evidence. In deciding said question in the affirmative we said at page 602: "Finally, in determining if the sale was voluntary, the trial court, as on the issue of whether the sale took place contemporaneously and involved similar property, must exercise a sound discretion which rarely ever calls for reversal by us. (Citations.)"

Upon setting forth its reasons for admitting proof of the purchase made by Caribe Motors, in order to give it the corresponding probatory value together with the rest of the evidence, the lower court stated:

"The said sale was made at the rate of $2.50 per square meter. True, Caribe Motors Corporation in 1946, and once the war was over, had either to purchase at that price by virtue of a previous contract of option and lease subscribed by the parties in 1942, or lease the said parcel for not less than five nor more than 25 years at the rate of 6 per cent per annum on the basis of $2.50 per square meter. (See defendant's Exhibit No. 1.) That was its privilege. At that time Caribe Motors had already built on said parcel a building the construction of which cost, according to Mr. Conway, a witness, $37,000. But the circumstances disclosed by the evidence show that Caribe Motors intended at all times to exercise its option to

purchase said parcel ever since 1942. Furthermore, Caribe Motors was not bound to purchase from the Heirs of González, formerly José María González, at that price and it could very well have done the same thing it did with the building it constructed in Puerta de Tierra on land leased from the Insular Government, in which case the building constructed by Caribe Motors would pass on, after a 30-year lease, to the Insular Government for its benefit. That is, Caribe Motors could use the parcel in question under a lease for the 25-year period to which it was entitled and thereafter leave for the benefit of the Heirs of González the building constructed on said parcel. Therefore we think that this transaction is not devoid of the element of spontaneousness which would make it inadmissible."

It is true, as stated by the lower court, that defendant's evidence demonstrated, throughout the testimony of Charles Conway, President of Caribe Motors, that said corporation always intended to purchase the property ever since in 1942 it was given the option to purchase. Moreover, if we take into consideration that the price of $2.50 per square meter was fixed in 1942 and the sale took place in 1946 and consummated in 1947, we can not agree with the plaintiff that said sale, under the attendant circumstances, lacked spontaneousness. It is of common knowledge that the market prices of a property such as the one involved here were lower in 1942 than in 1947, the date of the condemnation in the instant case. It can not be alleged that Caribe Motors was compelled to pay a higher price in 1946 upon exercising the option. We find nothing in the record tending to show such a fact.

██ This aspect of the error was not committed. However, it did commit that which refers to the lower court's having admitted another lease contract with option to purchase executed by the Heirs of José María González with Royal Crown Cola Company in connection with a parcel similar to the one taken, at the rate of $4 per square meter. We have held that an option to purchase is inadmissible in these proceedings to prove the value of the property taken.

*People* v. *Soc. Agrícola Mario Mercado e Hijos, supra.*
Despite the fact that this transaction was erroneously admitted we do not feel that plaintiff was prejudiced since the price fixed to the condemned parcel was $2 per square meter.

■ Finally, plaintiff maintains in this assignment that the benefits received by the remainder of defendant's property as a result of the condemnation, which was intended to widen the existing highway, compensate the damages that defendant's property might have sustained. He is wrong. The benefits obtained by the remainder of defendant's property are of a general character to the community because of the condemnation for the aforesaid purpose. *People* v. *Soc. Agric. Mario Mercado e Hijos*, 72 P.R.R. 740, 757.

■ Neither the first nor the second error assigned by the plaintiff was committed. Although the income tax return of Roberto Colón Mfg. Co. for 1947 and the profits or losses therein set forth in connection with the sale it made to the defendant in 1943 of one of the properties, of which a portion was involved in the condemnation herein, the defendant having paid with shares of the corporation, could have served as a foundation to challenge defendant's testimony as to the price he paid for said property—assuming that the income tax return were admissible, which we need not decide here—said challenge would have been on a question collateral to the issue in the case, namely, the appraisal of the parcel taken.

The value of the shares on the date of the purchase of the land in 1943, or the profits or losses of the corporation set forth in its income tax return, are not factors of the value of the parcel on the date of the condemnation. In order to make a just appraisal there must be considered the price that a buyer would be willing to pay at a voluntary sale and that at which a vendor, under like circumstances, would be willing to sell taking into account the condition of the land at the time of the condemnation and the

most profitable use to which the owner might devote it within a reasonably near future. *People* v. *Huyke, supra.* The price paid for the property from which the parcel was condemned did not matter. The important thing was to determine its value at the time of the condemnation.

 We shall now consider defendant's appeal. He assigns three errors which may be reduced to one: that the lower court erred in not admitting in evidence the proof that plaintiff had made an assessment and a deposit in order to condemn in this same proceeding lands located right across defendant's lands, at the rate of $4 per square meter. In connection with this evidence the court used the following language:

". . . In the instant case the defendant presented evidence, which was rejected, to the effect that the People of Puerto Rico assessed and paid for lands right in front of defendant's land for a parcel of 1,300 and odd meters at the rate of $4 per square meter. Such evidence is inadmissible pursuant to the laws and decisions applicable in condemnation cases.

" 'In consolidated proceedings by United States to condemn lands in Iowa, permitting cross examination of government's witnesses as to prices paid by government for *other tract taken for same project constituted prejudicial error.*' *U. S.* v. *Foster,* CCA Iowa 1942, 131 F. 2d 3.

"To admit that evidence would force the Court to enter into collateral controversies which would in nowise aid the Court inasmuch as courts must reach their own conclusions in accordance with the evidence heard and not be led by the justice or injustice of a former assessment made by a certain assessor for the People of Puerto Rico. If based on the opinion of an assessor the People of Puerto Rico paid in a condemnation proceeding such or such a sum per square meter, it is beyond our jurisdiction and judicial calling to consider the good or evil part or the propriety or impropriety of such fact in this which is a suit different from that referred to in the evidence offered and rejected."

The defendant argues that under the rule of admissibility as evidence of similar sales, established in *Puerto Rico*

*Housing Authority* v. *Valldejuli, supra,* when the People of Puerto Rico is one of the parties, the price which, in a condemnation suit, the People fixes to a similar parcel must also be admissible. We can not agree with the defendant. The rule of admissibility adopted in the *Valldejuli* case is subject to proof that the sale between both contracting parties was spontaneous. In a condemnation proceeding there is no such spontaneousness. The mere fact that such a proceeding had to be availed of indicates that the parties were not able to agree freely as to the price. As stated in 2 Nichols on Eminent Domain, 2d ed., § 456, p. 1199:

". . . Forced sales, such as a sale of real estate by an administrator, or a sale upon the foreclosure of a mortgage are not admissible, because they do not show market value. For the same reason it is not competent for either party to put in evidence *the amount paid by the condemning party to the owners of neighboring lands taken at the same time, and as part of the same proceedings, however similar they may be to that in controversy, whether the payment was made as the result of a voluntary settlement, an award, or the verdict of a jury. . . ."* (Italics ours.)

The errors assigned not having been committed, the judgment appealed from will be affirmed.

Mr. Justice Negrón Fernández took no part in the decision of this case.