**12**

**BANK OF THE PHILIPPINE ISLANDS,**
Appellant,

v.

**William P. ROGERS, Attorney General of the United States and Successor to the Philippine Alien Property Administrator, et al., Appellees.**

**PHILIPPINE NATIONAL BANK, A Philippine Corporation, Appellant,**

v.

**William P. ROGERS, Attorney General of the United States and Successor to the Philippine Alien Property Administrator, et al., Appellees.**

**Nos. 14807, 14808.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 29, 1959.

Decided Nov. 5, 1959.

Petition for Rehearing En Banc Denied
Jan. 11, 1960.

———

Rehearing Denied Aug. 25, 1960.

Mr. Joseph B. Friedman, Washington, D. C., with whom Mr. Melville E. Locker, Washington, D. C., was on the brief, for appellant in No. 14,807.

Mr. Matthew E. McCarthy, Washington, D. C., with whom Messrs. William H. Matthews and Ben Ivan Melnicoff, Washington, D. C., were on the brief, for appellant in No. 14,808.

Mr. Irwin A. Seibel, Attorney, Department of Justice, with whom Messrs. George B. Searls and Sidney Harris, Attorneys, Department of Justice, were on the brief, for appellees.

Before WASHINGTON, DANAHER and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

These are separate appeals from a judgment of the District Court in favor of the defendants and against each of the plaintiffs in two civil actions consolidated for trial, which arose under Section 9(a) of the Trading with the Enemy Act, 40 Stat. 419 (1917), as amended, 50 U.S.C.A.Appendix, § 9(a), and the Fifth Amendment. The actions were brought by the Bank of the Philippine Islands (BPI) and the Philippine National Bank (PNB) against the Treasurer of the United States and the Attorney General, as successor in interest to the Philippine Alien Property Administrator, for recovery of certain pre-World War II Philippine currency amounting to ₱951,387, of which ₱662,387 were in Philippine Treasury Certificates and ₱289,000 were in Philippine National Bank Notes. This currency was discovered in March of 1945 by the American Armed Forces in a hiding place in the

mountains near Bacolod, on the Island of Negros, in the Philippines. The parties agree that it must have been buried there by the Japanese Army, which was in retreat from the American advance. The currency was vested as enemy-owned property by the Philippine Alien Property Administrator of the United States, pursuant to Vesting Order P–285 of August 5, 1947.[1]

The published opinion of Judge Tamm, the trial judge, fully sets forth the issues of fact and law presented to him. He accepted BPI's assertion that in March 1943, pursuant to a Japanese Military Order, it transferred ₱638,000 to Nampo Kaihatsu Kinko (Nampo), a bank which was financial agent for the Japanese Military Administration in the Philippine Islands. In return BPI received Japanese Military Notes. The court also accepted, arguendo, the assertion that Nampo commingled the currency from BPI with currency similarly obtained from PNB in Manila, and that a portion of this fund was transferred by Nampo to the Bacolod Branch of PNB. The currency was used on the Island of Visayan to redeem certain emergency currency issued by the Commonwealth Government of the Philippine Islands shortly prior to the Japanese occupation. But a portion of the commingled pesos remained at the Bacolod Branch until March 1945 without having been used for redemption. On March 2, 1945, the residue of this redemption fund was transferred pursuant to another Japanese Military Order to the Bacolod Branch of the Bank of Taiwan, an agent of the Japanese Military Administration. Bank of Philippine Islands v. Rogers, D.C.D.C.1958, 165 F.Supp. 100, 104–109.

██ The District Court's opinion concluded by saying that "It has not been proven by a preponderance of the evidence that the money captured by the United States Army was the same money that the Philippine National Bank, Bacolod branch, turned over to the Bank of Taiwan in March, 1945. Thus, neither plaintiff has carried the burden of proof that is necessary in this proceeding to establish [as required by Section 9(a)] a legal or equitable title in the vested property." 165 F.Supp. at page 110. The trial judge properly framed the critical issue of fact. Conceivably two issues might have been presented in connection with the identity of the recovered money: whether or not it had come from the Bank of Taiwan at Bacolod, and, if so, whether or not it represented any part of the money transferred from PNB, Bacolod, to the Bank of Taiwan. If appellants had offered evidence of a wrongful commingling at the Bank of Taiwan, perhaps it would have been necessary only to show that the recovered currency came from the Bank of Taiwan Restatement, Restitution § 211 (1937). But no evidence of wrongful commingling at the Bank of Taiwan was adduced. Thus, the trial court properly ruled that appellants had to prove that "the vested money was the same money that was taken [by the Bank of Taiwan] from the Bacolod branch of the Philippine National Bank in March, 1945." Bank of Philippine Islands v. Rogers, supra, at page 108.

██ Appellants' primary witness in support of the identity of the currency was Mr. Jose V. Buenaventura. The trial court considered that his credibility was seriously impaired. Ibid. Apart from Mr. Buenaventura's testimony, the only evidence relevant to the source of the vested currency was the proximity of the recovered money to Bacolod and the nature of the boxes in which it was found. The boxes were of the type commonly used by Japanese banks to pack currency, and were labeled with Japanese characters. As the trial court pointed out, the place where and the containers in which the currency was found could support a number of inferences concerning the source of the currency. Id., at pages 106–107. Among other possibilities, the recovered currency could

---

1. The Vesting Order is reprinted in the opinion of the District Court. D.C.D.C.1958, 165 F.Supp. 100, 102 .

well have come from a fund existing at the Bank of Taiwan prior to receipt of the pesos from PNB, Bacolod. Consequently, we think the trial court correctly held that appellants had not sustained their burden of proof. Although the phrase "preponderance of the evidence" is used, it is clear that the claimants' burden is one of persuasion as well as of going forward. The United States need not produce evidence until that burden of persuasion is met. See Sturchler v. Hicks, D.C.E.D.N.Y.1926, 17 F.2d 321.

■ We do not feel compelled to relax this burden in cases where, as in this, the friendly nationality of the claimants is unquestioned. Under all circumstances the Trading with the Enemy Act contemplates that seized property or the proceeds thereof will assist in compensating parties injured by enemy action. Thus, the seized currency will, on the failure of proof by PNB and BPI, be used to compensate debt claimants against the Japanese, see the Trading with the Enemy Act, 60 Stat. 925 (1946), 50 U.S.C.A.Appendix, § 34, and any remainder will be returned to the Philippine Government. Philippine Property Act of 1946, 60 Stat. 418, as amended, 22 U.S.C.A. § 1382. Further, BPI and PNB themselves may have claims against the Japanese Government, or recourse to their own courts or legislature if the funds are returned to the Philippine Government. In light of these alternatives, and because other parties have interests which are affected by the allowance of claims under Section 9, the burden of proof which the trial court imposed was not only authorized by the Act but a reasonable one as well.

■ Nor was it error to refuse to admit BPI Exhibits 1 and 2 to prove the identity of the vested currency. Exhibit 1 was Vesting Order P–285, cited above, which contained the recital that the vested currency was "the balance of the money deposited by the Southern Regions Development Bank (Nampo Kaihatsu Kinko) with the Philippine National Bank, Bacolod Branch, which was cap-

tured by the American Forces late in March 1945." The official who signed the vesting order was obliged only to determine that the currency was "owned or controlled by, * * * held on behalf of * * *, or owing to, or which is evidence of ownership or control by, a designated enemy country or national * * * [and that control of it was] necessary for the maintenance or safeguarding of other property belonging to the same designated enemy country or the same national thereof and subject to vesting * * *." Ex. Order No. 9095, 7 Fed.Reg. 1971 (1942), as amended, Ex. Order No. 9193, 7 Fed.Reg. 5205 (1942), and Ex. Order No. 9567, 10 Fed. Reg. 6917 (1945), 50 U.S.C.A.Appendix, § 6 note. No challenge has been made to the validity of the vesting order: hence, we need not consider whether the determination of "necessity" was made. It is clear, however, that the recital of the source of the currency was unessential and properly excluded since the surrounding circumstances, including the labeling on the packing boxes, sufficed to save from being arbitrary the conclusion that the vested property was Japanese. Accordingly, no presumption of correctness or trustworthiness attaches to the quoted recital in a suit de novo under Section 9(a) to determine the issue judicially, nor can the recital estop the Government. See United States v. Foster, 8 Cir., 1942, 131 F.2d 3, 7, certiorari denied, 1943, 318 U.S. 767, 63 S. Ct. 760, 87 L.Ed. 1138. Nothing in United States v. Chemical Foundation, 1926, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131, requires a contrary result: there, the Government sought to set aside official action, and failed to sustain its burden of proof when it challenged jurisdictional findings made by the administrative official.

■ Similar considerations apply to the refusal of the District Court to admit in evidence BPI's Exhibit 2, comprising various administrative findings made in a proceeding brought by BPI under Section 32 of the Trading with the Enemy Act, which terminated adversely to it.

These findings tended to support BPI's contention that the vested money was what was left of the money turned over by the Bacolod Branch of the PNB to the Bank of Taiwan. But these findings were not reports of personal investigation; they were conclusions based on evidence then available—an administrative interpretation not entitled to be given probative effect in a suit de novo dealing with the same questions. Third National Bank & Trust Co. v. United States, 6 Cir., 1931, 53 F.2d 599. The findings were not admissible, therefore, as proof in support of PBI's contentions, or as estopping the Government from insisting that the complainants bear the burden of proof.

Because the trial court's rulings with respect to the burden of proof and the admission of evidence were not in error, we need not reach the issues of law argued by the parties. The judgment below is

Affirmed.