JOHN E. WATKINS and BERTHA WATKINS, Appellants v. WABASH RAILROAD COMPANY, Appellee.

**Eminent domain:** EVIDENCE OF VALUE. For the purpose of testing
1  the knowledge of a witness and his competency to speak concerning the value of land sought to be condemned, he may be cross-examined as to the value of other like lands in the vicinity; but such testimony is not admissible as substantive evidence of the value of the property in controversy and should not be submitted to the jury for that purpose.

**Same:** MEASURE OF DAMAGES: INSTRUCTION. The measure of dam-
2  ages in cases of condemnation is the difference between the fair market value of the tract as a whole immediately before and after the taking; and an instruction which limits recovery to the value of the land actually taken ignoring a depreciation in value of the farm as a whole, where there is competent evidence of such depreciation, is erroneous.

*Appeal from Marion District Court.*— HON. J. H. APPLEGATE, Judge.

TUESDAY, NOVEMBER 19, 1907.

REHEARING DENIED TUESDAY, FEBRUARY 18, 1908.

The opinion states the case.— *Reversed.*

*N. E. Kendall* and *Crozier & Welch,* for appellants.

*Kinkead & Mentzer* and *Read & Read,* for appellee.

WEAVER, C. J.— *Ad quad damnum* proceedings having been instituted for the condemnation of land for the use of the defendant railway, the sheriff's jury assessed the plaintiff's damages at $325. From this finding the defendant appealed to the district court, where, upon trial to a jury, the damages were assessed at $223.95, and plaintiff appeals.

The principal question presented for our review involves the ruling of the trial court in admitting the testimony of one Leopold Liike, a witness on behalf of the defendant, as to the price at which he had sold his own land, and in giving to the jury an instruction relating to the weight to be given to this and other similar testimony. The witness abovementioned, having first testified that he was and had been the owner of land in the vicinity of plaintiff's farm and was familiar with land values in that neighborhood, estimated the fair market value of plaintiff's farm at $60 per acre. He then proceeded to say that at the date of the condemnation proceedings he owned a tract of land within about one-quarter of a mile from Watkins' land; that both were on the same creek, had about the same proportion of bottom land, and were quite similar in quality, except that Watkins' land was under better cultivation. He further stated that shortly before the trial he had sold the tract he had previously mentioned. The condemnation proceedings were had in May, 1903, and the trial at which the witness testified took place in October, 1904. He was then asked by defendant's counsel: " Q. What change has there been in market values of land in that locality since May, 1903, and at time you sold your place? (Objected to by plaintiff as incompetent, irrelevant, and immaterial. Overruled. Plaintiff excepts.) A. None that I know of. Q. At what price did you sell your land? (Objected to as incompetent and immaterial, and because witness says his land was inferior to the Watkins land. Overruled. Plaintiff excepts.) A. .$60 per acre."

It is to be conceded that under some circumstances testimony of this kind is admissible to show the knowledge of

the witness and his competency to speak as an expert upon

1. EMINENT
DOMAIN:
evidence
of value.

the subject concerning which he is being examined. This is especially true where the witness has assumed to express an opinion, and is being cross-examined for the purpose of testing the weight and value of his testimony. *King v. Railroad Co.,* 34 Iowa, 458; *Winkelmans v. Railroad Co.,* 62 Iowa, 11; *Cummins v Railroad Co.,* 63 Iowa, 397; *Hollingsworth v. Railroad Co.,* 63 Iowa, 443. But the practically universal rule is to the effect that such testimony is . not admissible as substantive evidence of the value of the property which is the subject of the controversy. That the offer of the testimony in the present case was not intended simply to show the qualification of the witness to give an opinion of the value of plaintiff's land can hardly be disputed from the record before us. The witness had already shown his qualification by testifying to his ownership of land in that vicinity, and to his familiarity with land values in the neighborhood. Having thus shown his qualification, he had been allowed to give his testimony without objection. Thereafter, and apparently for no other reason than to corroborate his estimate and give it additional strength and influence with the jury, he was allowed to state that nearly a year and a half after the condemnation proceedings were instituted and the sheriff's jury had made its assessment of damages he had sold his own land at $60 per acre. In this we think there was prejudicial error. See *Railroad Co. v. Huster,* 40 Pa. 53; *Railroad Co. v. Bunnell,* 81 Pa. 414; *Railroad Co. v. Benson,* 36 N. J. Law, 557; *Railroad Co. v. Pearson,* 35 Cal. 247; *Railroad Co. v. Keith,* 53 Ga. 178. The reasoning upon which the doctrine of these cases is based is usually stated as follows:

The value of the property in controversy may be shown by the testimony of competent witnesses, and on cross-examination, for the purpose of testing their knowledge re-

specting the market value of land in that vicinity, they may be asked to name such sales of property and prices therefor as have come to their attention. But a party may not establish the value of his land by showing what was paid for another parcel similarly situated because it appears to give to the agreement of the grantor and grantee the effect of evidence by them that the consideration for the conveyance was the market value, without giving to the opposite party the benefit of cross-examination to show that one or both were mistaken. If such fact is to be admitted as some evidence of value, then *prima facie* a case could be made out so far as the question of damages is concerned by proving a single sale, and thus the agreement of the parties to such sale which may have been the result of necessity or caprice would be evidence of the market value of land similarly situated, and become a standard by which to measure the value of the land in controversy. This would lead to an attempt by the opposing party, first, to show the dissimilarity of the two parcels of land; and, second, the circumstances surrounding the parties which induced the conveyance, such as a sale by one in danger of insolvency in order to realize money to support his business, or a sale in any other emergency which forbids the grantor to wait a reasonable length of time for the public to be informed of the fact that his property is in the market, or, on the other hand, that the price paid was excessive and occasioned by the fact that the grantee was not a resident of the locality nor acquainted with real values, and was thus readily induced to pay a sum far exceeding the market value. Thus each transaction in real estate claimed to be similarly situated might present two side issues which could be made the subject of as vigorous contention as the main issue, and, if the transactions were numerous, it would result in unduly prolonging the trial and unnecessarily confusing the issues with the added disadvantage of rendering preparation for trial difficult.

See *Huntington v. Attrill,* 118 N. Y. 365 (23 N. E. 544); *Mayor v. McCarthy,* 102 N. Y. 630 (8 N. E. 85). There is some language in the opinion of this court in *Cherokee v. Town Lot Co.,* 52 Iowa, 279, which affords ground for the contention of the appellee in this respect. But this language was materially modified upon the rehearing of that

case, and so far as we know, this court has never recognized that case as establishing the rule that the price realized by the sale of one tract of land affords a standard by which the jury may determine the value of another tract. Moreover, the witness in the present instance, while showing that in some features there was a similarity between the land formerly owned by him and the land owned by plaintiff, concedes that there was a difference in favor of plaintiff's property, in that it was under a better state of cultivation and the fact that the improvements on his land were of little or no value. These admissions on his part show that there was a substantial difference between the two tracts in some of the. essential elements which ordinarily affect in a material degree their character and market value, and, even if we are to give the case of *Cherokee v. Town Lot Co.* the full effect of an authoritative precedent in cases presenting a like statement of facts, we think it would not be applicable to a state of facts such as is here disclosed. As having some bearing on this question, see *Simons v. Railroad Co.,* 128 Iowa, 139; *Ranck v. Cedar Rapids,* 134 Ia. 563. During the course of the trial in the district court, it was developed that since the condemnation proceedings plaintiff had sold his farm, receiving $60 per acre therefor, and reserving to himself the right to such damages as should finally be awarded against the railroad company. Concerning this fact, and the testimony of the witness Liike to which we have already adverted, the court gave the jury an instruction embodying the following language:

Testimony has been introduced. upon the trial of this case with reference to the sale of the Liike farm, in the vicinity of the land owned by plaintiff, and you are instructed that, in determining the reasonable market value of plaintiff's farm, if you find from the evidence that the farm, if sold in the vicinity of plaintiff's farm, was similar in character to plaintiff's farm, and that same was sold near the time of the location of the switch upon plaintiff's land, or at such time. thereafter as that there was no change in the

reasonable market value of land in that vicinity, then and in that event it would be proper for you to take into consideration the price at which the farm was sold in determining the reasonable market value of plaintiff's farm.   It is also shown by the testimony that, since the locating of such switch upon plaintiff's farm, plaintiff has sold said farm at $60 per acre.   You are instructed that if you find from the preponderance of the evidence in this case that prior to the location of said switch upon plaintiff's farm the reasonable market value of said farm did not exceed the sum of $60 per acre, and you further find from the preponderance of the evidence that the locating of said switch upon plaintiff's farm in no way of itself increased the market value thereof, and you further find that the market value of said farm was not otherwise enhanced between the locating of said switch upon said farm and his sale thereof, then, and in that event, plaintiff would be entitled to recover in this case only the reasonable market value of the land actually appropriated by the defendant.

As we have already held that the testimony of Liike in this respect was improperly admitted, it follows that this instruction so far as it submits such testimony to the jury for their consideration in determining the reasonable value of the land in question, must be disapproved.   ·

We are also of the opinion that the instruction concerning the effect of plaintiff's sale of the land after the condemnation was erroneous.   The approved rule for the measurement of

2. SAME: measure of damages: instruction.

damages in this class of cases is the difference between the fair market value of the tract of land as a whole immediately before the condemnation of a part thereof and the fair market value of such tract immediately after such condemnation, without taking into consideration any actual or possible benefits which may be occasioned to the property by reason of the improvement for which the condemnation was made.   Now, if we understand the language of this instruction, it omits entirely the element of depreciation, if any, in the value of the land, and says to the jury if the market value of the farm at the time

of the condemnation did not exceed $60 per acre, and if such value was not thereafter enhanced either by reason of the location of the switch for which condemnation was made, and was not otherwise enhanced prior to his sale thereof, then he would be entitled to recover only the reasonable market value of the land actually taken and appropriated by the defendant. There was evidence before the jury on part of the plaintiff tending to show that the condemnation of this portion of the farm had the effect to depreciate its market value as a whole from $3 to $10 per acre. If this testimony was true, plaintiff suffered a damage far in excess of the value of the land actually taken by the railroad company, yet, under the doctrine or rule stated in this instruction, he would not be entitled to recover anything beyond the value of that acreage. While the price at which he sold the farm may have been a circumstance which the jury might legitimately consider as bearing upon the value of the property, and while it might be true that in selling he obtained a price for such land fully equal to its market value, before the condemnation, it by no means necessarily follows that his farm as a whole did not suffer a material depreciation by reason of the defendant's appropriation of the tract in question. The assignment of error upon the giving of this instruction must therefore be sustained.

Other questions presented in argument become immaterial in view of the conclusions we have hereinbefore stated.

For the reasons already given, the judgment of the district court must be, and it is, *reversed*.