CLARA BELLE DICE, Administratrix, Appellee, v. HAZEL K. JOHNSON, Appellant.

**HIGHWAYS:** Ordinance Requirement on Motor Vehicle Only—Effect. An ordinance prescribing a maximum speed of 15 miles an hour for *motor* vehicles on the public streets, by necessary implication requires the drivers of *nonmotor* vehicles, while attempting concurrent use of the street with motor vehicles, *to be not less careful in their rate of speed.*

**TRIAL:** Incorrect Instruction Suggesting Correct One on Vital Issue. Principle recognized that the court may be obligated to instruct on a material proposition, brought to its attention by a requested but *erroneous* instruction.

**HIGHWAYS:** Reciprocal Law of Road—Instructions. An instruction that defendant, at the time of an injury to another, would be deemed negligent if he was on the wrong side of the street without justifiable excuse, must, *if the evidence would justify such a finding,* be accompanied by a counter instruction that the injured party would likewise be deemed negligent if he was on the wrong side of the street, without like excuse. (See Sec. 1569, Code Supp., 1913.)

**VENUE:** Change of Venue—Insufficient Grounds. Change of venue
4  from the superior to the district court may well be denied when
the ground assigned is prejudicial newspaper publications,
which, on examination, appear to have been nothing more than
non-inflammatory news items.

*Appeal from Cedar Rapids Superior Court.*—ATHERTON B.
CLARK, Judge.

DECEMBER 15, 1919.

ACTION for damages for wrongful death. There was a
verdict and judgment for the plaintiff for $13,500. The de-
fendant appeals.—*Reversed and remanded.*

*B. L. Wick, Redmond & Stewart,* and *Grimm, Wheeler,
Elliott & Jay,* for appellant.

*Johnson, Donnelly & Swab,* for appellee.

EVANS, J.—The fatal accident involved herein occurred
on E Avenue in the city of Cedar Rapids, in the afternoon
of the 15th day of September, 1917. The defendant, a young
woman, was driving west in a roadster au-
tomobile. The decedent, a young man 18
years of age, was driving east upon his bi-
cycle. A collision resulted between the au-
tomobile and the bicycle, whereby the young
man was fatally injured, dying, as a result of his injuries,
a few days later. The evidence is in direct conflict, both
as to the respective speeds of automobile and bicycle, and
as to which side of the center line of the street was the
place of the collision. The speed limit on this avenue was
15 miles an hour. Under the ordinance, this, in terms, ap-
plied to *motor* vehicles. The testimony for plaintiff tended
to show that the defendant was driving in excess of the
speed limit, and that she was driving on the left side of
the street when the collision occurred. The testimony for
the defendant contradicted the foregoing, and tended to

1. HIGHWAYS:
ordinance re-
quirement on
motor vehicle
only: effect.

show that the decedent was exceeding the speed limit, and was driving on the left side of the center line of the street. E Avenue ran east and west. The north side thereof, therefore, was the right side for the defendant, and the south side was the right side thereof for the decedent.

One of the grounds laid by appellant for reversal is that, while the trial court instructed the jury that, if the defendant was driving on the wrong side of the street, without justifiable reason at the time of the collision, or was exceeding the speed limit of 15 miles an hour, she would be guilty of negligence. The court failed and refused to apply to the decedent the same criterion of negligence. That is to say, it refused to instruct that, if the decedent was driving on the wrong side of the street without justifiable reason, or if he was driving at a rate of speed in excess of 15 miles an hour, he would be, *prima facie,* guilty of negligence.

The court did instruct that it was incumbent upon the plaintiff to show that the decedent was not guilty of contributory negligence, and did instruct that it was incumbent upon the decedent to exercise ordinary care. But no criterion was laid down as to what would constitute negligence on the part of the decedent, nor was there anything in the instructions from which the jury could understand that, if the decedent was driving on the wrong side of the street at the time of the collision, he would be deemed in law *prima facie* negligent. The matter thus omitted from the court's instructions was brought to its attention by a requested instruction. The requested instruction was not a correct one in its entirety, in that it incorporated other statements not proper to go to the jury.

2. TRIAL: incorrect instruction suggesting correct one on vital issue.

The ordinances introduced in evidence related, in terms, to *motor* vehicles. The instruction as given is defended by the appellee, on the ground that a bicycle is not a *motor*

vehicle.   This was doubtless the ground up-
on which the court made the distinction in
the instructions as to the respective duties
of the two parties to the collision.   If the
point thus raised by appellant is tenable, the nature of it
is such as to impose upon the court the duty, in the first
instance, of applying reciprocal rules or criteria for the
determination of the question of the negligence of the respec-
tive parties to the collision.   If this were doubtful, we think,
also, that the point was sufficiently brought to the attention
of the court to require its consideration, even though the
requested instruction contained matters not proper.   The
question whether the decedent should be deemed *prima facie*
negligent, if he was traveling on the wrong side of the
road, is one which is not controlled by the city ordinance.
The law of the road in that regard is co-extensive with the
state, and is determined by the statute.   Code Section 1569.
This statute has been repeatedly applied alike to all vehicles,
even the horse-drawn vehicle.   *Riepe v. Elting,* 89 Iowa 82,
85; *Cook v. Fogarty,* 103 Iowa 500, 503; *Needy v. Littlejohn,*
137 Iowa 704, 710; *Turner v. Bennett,* 161 Iowa 379; *Herd-
man v. Zwart,* 167 Iowa 500.

**3. HIGHWAYS: reciprocal law of road: instructions.**

We deem it clear that this criterion of prima-facie neg-
ligence on the part of the decedent should have been given
to the jury.

If the decedent were found to exceed the speed limit, a
somewhat different question is presented.   The ordinance
applies, in terms, to *motor* vehicles.   A bicycle is not with-
in the statutory definition of a motor vehicle.   Section 1571-
m1, Code Supplement, 1913.   The general policy of the stat-
ute and the ordinances fixing speed limits is to prevent
the propulsion of vehicles over the highways at excessive
speed.   The ordinances in force in different parts of the
state vary in their speed regulations from 10 to 30 miles
an hour.   There is little occasion for applying such ordi-

nances, either in terms or by construction, to horse-drawn vehicles, because ordinarily the minimum speed of the ordinance is beyond the maximum of the horse. This is not true of the bicycle. If it be prima-facie negligence, as a matter of law, because of breach of the ordinance, to propel a motor vehicle at a greater speed than 15 miles an hour within a particular zone, it would seem to follow, of logical necessity, that it would be likewise prima-facie negligence to propel a bicycle in excess of such speed within the same zone. Notwithstanding that the bicycle is not covered by the terms of the ordinance, it must be true that the rider of a bicycle may be guilty of negligence for excessive speed. If yea, there must be some accepted criterion by which such excess may be determined. In case of a collision between two vehicle-travelers moving in opposite directions upon the same highway, it would seem logical to measure the duty of each in the method of the use of the highway by the same criterion. Neither had any greater right upon the highway than the other. Each vehicle increases its dangerous character in the same manner and in the same proportion to its increased speed. Though the lighter vehicle has the less power of impact, and though the resulting injury be less in extent than would result from the impact of a heavier vehicle, yet the danger of injury commensurate with its weight is increased in some ratio to its speed.

We think we may take judicial notice that the overwhelming majority of vehicles that occupy the streets of our cities at the present time are motor vehicles. Considerations of due care would seem to require that any other vehicle using the highway concurrently with such motor vehicles should adapt itself to the general rules of the road which are imposed by statute or ordinance upon the great body of vehicles moving thereon. To put it in another way, the driver of a motor vehicle, being subjected by ordinance to certain rules of the road, has a right to rely upon the

observance of these rules by other vehicles, meeting or passing. Otherwise, he is unprotected against collision, even though he himself observes the rule. Indeed, the very efficacy or workability of the ·rules requires uniformity in their application. If some vehicles be required to keep to the right, and others be permitted· to turn to the left or to the right, as they may choose; if some vehicles be required to pass on the left ·of a vehicle going in the same direction, and if others be permitted to pass on the right, of what value are the rules as a means of safety?

No authority is cited to us, holding directly upon the particular point now under consideration. A collation of bicycle cases may be found, however, in 7 Corpus Juris 1153. It is the general consensus of these cases that a bicycle is a vehicle, and that it has the same right to the use of the road as any ·other vehicle, and is subject to the same liability.

We reach the conclusion that, though a bicycle is not a motor vehicle, within the meaning of the ordinance of Cedar Rapids, and though, therefore, a bicycle rider might not be liable to the penalty of the ordinance, under prosecution by the city, yet, as a rule of care in riding upon the streets of such city, the bicycle rider must adapt himself to the rules of the street, as applied to the great body of its traffic, and, in the event of collision with a motor vehicle, the duty of care of each driver will be deemed mutual and reciprocal, and will be measured by the same rules of the road. It follows that there was error in the instructions in this regard.

II. Some 30 grounds of reversal are assigned by the plaintiff. They have not been condensed, nor presented to us in concise form. In some of them, several pages of the abstract have been copied, evidently with a view of enabling us to pick out what we want. Waiving many lapses in the observance of the rules as to methods of presentation, we

have gone through the record sufficiently to discover that very many of the grounds thus assigned are without substantial merit. Many of the grounds are based upon alleged leading questions and cross-examination of plaintiff's own witnesses, and misconduct of counsel and misconduct of the jury. All these are matters that are not likely to figure in a new trial, and no special purpose would be served by our dealing with them.

In view of a new trial, we may say that we have grave doubt whether there is any evidence to justify the giving of Instruction 8, which is predicated upon the hypothesis that the defendant was trying to pass the automobile of the witness Gerber, at the time of the collision. Indeed, we think it must be said that there is not. The testimony set forth in appellee's brief, and relied on to support the instruction, is that of the defendant herself and her witnesses, Metz and Gerber. The only fair construction to put upon the testimony of these three witnesses is that the defendant was driving a few feet to the rear of Gerber, on a line a few feet to the left of Gerber's line of travel.

III. One ground of reversal urged is the overruling of defendant's motion for a change of venue from the superior court of Cedar Rapids to the district court of Linn County, at Marion. This motion was based largely upon alleged prejudicial publications concerning the accident by the newspapers of the city at the time thereof. Clippings have been set forth in the record, and we have read them. These articles so published contain nothing prejudicial to the defendant. They were not even hostile to her. They simply published the item of news, and gave the defendant's version of the affair. While this alleged version may not have been strictly accurate as a version of the defendant, there was nothing hurtful in the variance. No charge of prejudice was made as against the inhabitants of the coun-

**4. VENUE: change of venue: insufficient grounds.**

ty, nor was there any request for a change of venue from the county. The jurors were drawn, under the statute, from the body of the county, in the same manner as jurors are drawn for the district court. We think the court acted within its proper discretion in denying the change of venue. We see no occasion for making pronouncement on other errors assigned. As to the size of the verdict, it is appropriate that we withhold opinion, in view of the necessity of a new trial. For the errors indicated, the judgment below must be reversed, and a new trial ordered.—*Reversed and remanded.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.