GEORGE E. LEHMAN, and GEORGE E. LEHMAN, as executor of estate of William F. Lehman, deceased, appellees,
v. IOWA STATE HIGHWAY COMMISSION,
appellant.

No. 49644.

(Reported in 99 N.W.2d 404)

November 17, 1959.

William L. Meardon, of Iowa City, C. J. Lyman, Special Assistant Attorney General, and Daniel T. Flores, General Counsel, Iowa State Highway Commission, both of Ames, for appellant.

Arthur O. Leff, of Iowa City, for appellees.

GARFIELD, J.—This is an appeal by Iowa State Highway Commission, defendant-condemnor, from an award of compensation, following trial in district court, for the taking of a strip of land for a new controlled-access highway across plaintiffs' farm. Plaintiffs had appealed to the court from the award of the commissioners or "jury" appointed for that purpose. The two errors assigned here relate to the district court's instructions to the jury.

The condemned strip, containing 3.4 acres, was taken in

relocating U. S. Highway 6 in Iowa City and vicinity. Twelve acres lie north of the new highway and about 104 acres south of it. (The new highway goes east and west at this point.) The farm is nearly four times as long, north and south, as its width east and west. No direct access to the new highway from plaintiffs' land is to be permitted.

A north-and-south public highway abuts plaintiffs' farm on the west for its entire length of nearly a mile. The new highway does not interfere with direct access to plaintiffs' land along its west line from any point on the existing north-and-south highway except where new U. S. 6 crosses it.

The condemnation was instituted pursuant to what is now chapter 306A, Code, 1958, providing for the establishment of controlled-access highways. Section 306A.1 states: "Declaration of policy. The legislature hereby finds, determines, and declares that this chapter is necessary for the immediate preservation of the public peace, health, and safety, and for the promotion of the general welfare."

Section 306A.2 defines a controlled-access facility "as a highway or street especially designed for through traffic, and over, from or to which owners or occupants of abutting land or other persons have no right or easement or only a controlled right or easement of access, light, air, or view by reason of the fact that their property abuts upon such controlled-access facility or for any other reason."

Section 306A.4 provides in part: "No person shall have any right of ingress or egress to, from, or across controlled-access facilities to or from abutting lands, except at such designated points at which access may be permitted, upon such terms and conditions as may be specified from time to time."

I. Defendant-commission's first assigned error is that the trial court erred in allowing the jury to consider as an element of damage the deprivation of direct access between the new controlled-access highway and plaintiffs' remaining property adjacent thereto.

The commission asked the court to instruct the jury, "* * * the rights of plaintiffs to access to U. S. Highway No. 6 as relocated are condemned, but you are told that such loss of

access is not an element of damages, and you cannot allow or consider any damages on this account in arriving at your verdict."

The commission duly objected to the court's refusal to include this request in the instructions given for the reason that plaintiffs had no right of access to new U. S. 6 because it was not in existence and they could not have access to something that did not exist; defendant, therefore, is not taking any access from plaintiffs which they had prior to establishment of the improvement.

The court gave no instruction on the subject referred to in the request. However, instruction 10 states that in determining the fair and reasonable market value of plaintiffs' property the jury is authorized to consider several designated matters, including "the increased inconvenience, if any, of access from one part of the farm to another; the increased inconvenience, if any, with the use and enjoyment of the premises arising from the taking * * * together with all other facts and circumstances bearing upon the fair and reasonable market value of plaintiffs' property and which will throw light upon the question for your determination."

Before arguments to the jury it was stipulated that an objection be interposed by defendant (commission) to any arguments by plaintiffs' counsel to the jury relative to damages allegedly sustained by plaintiffs by reason of condemnation of direct access to Highway 6 as relocated. The court overruled the objection and plaintiffs' counsel argued to the jury that deprivation of direct access to new Highway 6 constituted an element of damages for which plaintiffs should be compensated.

Iowa State Highway Comm. v. Smith, 248 Iowa 869, 82 N.W.2d 755, holds that where an *existing* unlimited-access highway is converted into a controlled-access highway, an adjoining owner may not be deprived, without just compensation, of his existing right to reasonable access to his property. "No hard and fast rule can be stated as to whether an abutting property owner has been denied access that is reasonable * * *. In most instances the question is one of fact, not of law, and its determination depends largely upon the evidence in the particular case." (Page 877 of 248 Iowa, page 760 of 82 N.W.2d.)

The Smith decision is approved and the language just quoted is repeated in Wilson v. Iowa State Highway Comm., 249 Iowa 994, 1004, 90 N.W.2d 161, 167.

The commission contends the Smith and Wilson precedents have no application here because plaintiffs never had a right of access to the new highway, they were not deprived of a right they never had and are entitled to no compensation therefor. The authorities amply support this contention. Plaintiffs' counsel conceded as much upon submission of the appeal to us. And their brief says, "We do not claim a landowner has a right of access to a controlled-access highway * * *."

█ We hold that establishment of a new controlled-access highway through land does not deprive the owner of a right of access to his property from the new highway and he is entitled to no compensation for the claimed taking of a right that never existed. Plaintiffs have the same access to their land from a highway they have always had except at the point where new U. S. 6 crosses the existing road. Plaintiffs are not deprived of an existing right of reasonable access to their land by the fact the new highway does not afford them additional means of access. The jury should have been instructed here in accordance with the thought embodied in defendant's requested instruction that plaintiffs were not deprived of a right of access to the new highway and were not entitled to be compensated for any claimed taking thereof.

██ We understand our section 306A.1, quoted above, to mean that the legislature has declared the establishment of controlled-access highways to be a necessary exercise of the police power. The general rule is that no compensation is due a citizen by reason of damage to property from the lawful exercise of the police power. Compensation must, however, be made for what is taken by eminent domain. City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1107–9, 184 N.W. 823, 188 N.W. 921, 23 A. L. R. 1322, 1331; State, by and through State Hgwy. Comm. v. Burk, 200 Ore. 211, 265 P.2d 783; State v. Fox, 53 Wash.2d 216, 332 P.2d 943, 946; Carazalla v. State, 269 Wis. 593, 70 N.W.2d 208, 71 N.W.2d 276; 29 C. J. S., Eminent Domain, section 6; 18 Am. Jur., Eminent Domain, section 11.

Insofar as chapter 306A provides there shall be no direct

access to a new highway we think it is a proper exercise of the police power in order to meet the requirements of present day highway traffic. Burk and Carazalla cases, supra. Plaintiffs do not question the validity of chapter 306A but point out in argument that it specifically authorizes the acquisition of controlled-access highways.

A note in 43 Iowa Law Review 258, 267, says: "The cases and writers on the subject have taken the position that if the highway is originally designated as a non-access facility this is a valid exercise by the state of its police power and no easement of access is ever created. Consequently, in eminent domain proceedings to determine the value of the property that is taken to establish a non-access highway, the court is justified in instructing the jury that such property never had a right of access so that the non-existence of such an easement is not to be considered as an element of damage."

An annotation in 43 A. L. R.2d 1072, at 1079, states: "It seems reasonably clear that where the landowner had no pre-existing right of access, * * * the mere fact that a limited-access highway is brought adjacent to his property * * * will not be sufficient to create in him a right of access which the state must then condemn."

Decisions that support the views we have expressed include Schnider v. State, 38 Cal.2d 439, 241 P.2d 1, 43 A. L. R.2d 1068; State ex rel. Rich v. Fonburg, 80 Idaho 269, 328 P.2d 60, 64; State ex rel. State Highway Comm. v. Clevenger, 365 Mo. 970, 291 S.W.2d 57; State etc. v. Burk, supra, 200 Ore. 211, 265 P.2d 783; State v. Calkins, 50 Wash.2d 716, 314 P.2d 449; Carazalla v. State, supra, 269 Wis. 593, 70 N.W.2d 208, 71 N.W.2d 276. See also Smick v. Commonwealth, Ky., 268 S.W.2d 424.

It is of course true that where, as here, a new highway is put through land its controlled-access character is relevant on the issue of damages to the property resulting from the severance. If the highway is of the controlled-access kind the severance is more complete and the diminution in value of the land because of the increased inconvenience in going from one tract to the other is properly to be considered in making the award. Clevenger, Burk and Calkins cases, supra; Note 43 Iowa

Law Review, 258, 267, 268. Plaintiffs received the benefit of this rule from what was said in instruction 10 to the jury, previously referred to. But we see a clear distinction between denial of access to the highway itself and a severance of the land which results in inconvenience in going from one tract to the other.

Plaintiffs' principal attempt to justify refusal of defendant's requested instruction is that its notice of condemnation to plaintiffs states, "it is specifically provided that all rights of direct access between said Primary Road No. U. S. 6 and condemnee's remaining property adjacent thereto are condemned." Also that the requested instruction previously quoted refers to condemnation of plaintiffs' right of access to the new highway.

We think this recital in the notice or the one in the requested instruction should not compel the State to pay for a right plaintiffs never had, was not taken from them, and which was not acquired through the condemnation. If plaintiffs are paid for what is taken from them they have no just claim to an additional amount. Allowance of compensation for something not taken would amount to a gift which the State has neither the obligation nor the right to make.

Perhaps the condemnation notice and requested instruction assume something untrue—that plaintiffs had a right of access to the new highway. This language may have been included in the notice and request out of an excess of caution. Chapter 306A is broad enough to authorize condemnation not only of land for a new controlled-access facility but of rights of access to an existing unlimited-access road which is being converted into a facility of the controlled-access type as was done in Iowa State Highway Comm. v. Smith, supra, 248 Iowa 869, 82 N.W.2d 755, and Wilson v. Iowa State Highway Comm., supra, 249 Iowa 994, 90 N.W.2d 161. Section 306A.5. This same section provides, "All property rights acquired under * * * this chapter shall be in fee simple." Until now it has never been decided in Iowa there is no right of access to a new controlled-access facility and of course defendant had no assurance what our decision upon the question would be.

Then too, inclusion of the above quoted language in the notice of condemnation served the purpose of informing plain-

tiffs they would have no rights of direct access to their remaining property from the new highway. A situation somewhat similar to that presented here existed in the leading case of State etc. v. Burk, supra, 200 Ore. 211, 265 P.2d 783.

If the trial court may have been warranted in refusing defendant's requested instruction just as written, it was sufficient to call the court's attention to an important question in the case upon which an instruction was required and the instructions actually given were silent. Under such circumstances it was the court's duty to instruct upon the matter.

This from Law v. Hemmingsen, 249 Iowa 820, 825, 826, 89 N.W.2d 386, 391, is applicable here:

"But the request was clearly sufficient to call to the court's attention the importance of such an instruction. See Dice v. Johnson, 187 Iowa 1134, 1137, 175 N.W. 38; State v. Cessna, 170 Iowa 726, 729–31, 153 N.W. 194, Ann. Cas. 1917D 289; Wise v. Outtrim, 139 Iowa 192, 204, 205, 117 N.W. 264, 130 Am. St. Rep. 301; Hanson v. Kline, 136 Iowa 101, 112, 113 N.W. 504; Kinyon v. Chicago & N. W. Ry. Co., 118 Iowa 349, 361, 92 N.W. 40, 44, 96 Am. St. Rep. 382.

"The Kinyon case states: 'As a rule, instructions offered by counsel are not so framed that the court is justified in giving them literally as asked, but, if the main thought sought to be expressed contains a pertinent legal principle which is not already fully covered by other instructions given, the court should embody it in proper words in its own charge.' "

We think the main thought of defendant's request is that compensation should not be allowed plaintiffs for any claimed taking of a right of access to the new highway.

See also, in addition to the precedents cited in Law v. Hemmingsen, supra, 53 Am. Jur., Trial, section 525, pages 423, 424, and 88 C. J. S., Trial, section 408b, page 1127, which states: "Thus an incorrect request may be sufficient to call the attention of the court to its omission or failure to charge on a material issue or matter so as to obligate it to charge correctly or more specifically thereon."

II. Various witnesses testified as experts on valuation of plaintiffs' property. On their cross-examination testimony was elicited as to the sales price of other properties in the vicinity.

The record shows and it seems to be conceded this cross-examination was "to test their knowledge and competency to testify as expert valuation witnesses." But the record does not show, nor is it suggested, the court orally informed the jury of the limited purpose for which the evidence was received and might be considered.

Defendant asked the court to instruct the jury as to the limited purpose for which such testimony was introduced and that it should not be considered as evidence tending to fix the value of plaintiffs' property. The matter was not referred to in the instructions given and proper objection was made to the court's refusal of this request. We think the request was proper and the substance of it should have been given.

The sole issue for jury determination was the amount of plaintiffs' damages for the taking of part of their property, measured by the difference between the fair and reasonable market value of the farm as a whole immediately before and immediately after the taking. As plaintiffs concede in argument, according to our prior decisions the testimony elicited on cross-examination was not substantive proof of the value of plaintiffs' property but was competent for the sole purpose of testing the weight and value of the experts' opinions as to values given on direct examination. Maxwell v. Iowa State Highway Comm., 223 Iowa 159, 165, 271 N.W. 883, 118 A. L. R. 862, 867, and citations; Annotation, 118 A. L. R. 869, 906, 907.

The Maxwell case quotes this with approval from Watkins v. Wabash Railroad Co., 137 Iowa 441, 442, 113 N.W. 924: "It is to be conceded that under some circumstances testimony of this kind is admissible to show the knowledge of the witness and his competency to speak as an expert upon the subject concerning which he is being examined. This is especially true where the witness has assumed to express an opinion, and is being cross-examined for the purpose of testing the weight and value of his testimony. [Citations] But the practically universal rule is to the effect that such testimony is not admissible as substantive evidence of the value of the property which is the subject of the controversy."

The A. L. R. annotation, supra, sets out many precedents from a dozen states including Iowa which support the proposi-

tion that where value of realty is at issue evidence as to particular sales of other land may not be introduced as independent proof on the question of value. We are not asked to re-examine our decisions on this point.

Law v. Hemmingsen, supra, 249 Iowa 820, 835, 89 N.W.2d 386, 397, holds it is error to fail to instruct or admonish the jury as to the limited purpose for which evidence is received. There evidence was admitted of statements of witnesses as tending to discredit their testimony, not as substantive proof of the matters related in the statements. We said: "The jury was not so admonished either orally by the court or in the written instructions. It had no way of knowing the limited effect to be given the impeaching testimony. Upon another trial the jury should be properly instructed upon this point." (Citations) Plaintiffs' brief here refers to the cross-examination in question as having been for impeachment purposes.

Broderick v. Barry, 212 Iowa 672, 237 N.W. 481, 75 A. L. R. 1530, cited in Law v. Hemmingsen, supra, holds it was reversible error to fail to instruct, apparently even in the absence of a request therefor, as to the limited effect to be given evidence of admissions of the driver and of owners of an automobile. See also Gehlbach v. McCann, 216 Iowa 296, 298, 299, 249 N.W. 144.

88 C. J. S., Trial, section 311, states in heavy type: "Where evidence is admitted which is competent for one purpose only * * * the court should charge the jury that it should not be considered for purposes other than those for which it was admitted." The text which follows this statement says it is subject to the rule in some jurisdictions making a request for such an instruction necessary.

53 Am. Jur., Trial, section 670, states: "Where a court admits evidence competent for a certain purpose only, it may at the time admonish the jury as to the purpose for which the evidence is admitted, or it may by an instruction limit the evidence to the purpose for which it is admissible, and caution the jury against improper use of it. In fact, it is the court's duty to give such an instruction, and to refuse a proper request therefor constitutes error, unless the evidence can be used by the jury only for the purpose for which it was introduced, or unless

the matter is covered by directions at the time the evidence is admitted * * *."

Plaintiffs cite no authority, nor has any come to our attention, in support of the refusal of this requested instruction. Indeed they say in their brief, "It may well be that the giving of the instruction would not have been error * * *."

Defendant is entitled to another trial because of the errors herein referred to.—Reversed and remanded.

BLISS, OLIVER, THOMPSON, GARRETT, and THORNTON, JJ., concur.

HAYS, J., LARSON, C. J., and PETERSON, J., dissent.

HAYS, J.—I respectfully dissent.

The decision, as announced by the majority opinion, is based upon two propositions: (1) The relocated highway is new, in contrast with a widening of an existing one, and (2) no right of access existed before, hence by the establishment of the new highway no property was taken. The first proposition is substantiated by the record. The second is, in my opinion, a mere assumption; is directly contrary to a long line of Iowa decisions, and is not a sound legal conclusion.

Chapter 306A, which authorizes the establishment of controlled-access highways, provides that all or any highways may be so designated. Search the chapter as you will and nowhere therein will you find any distinction between a new and an existing highway. Thus, where the majority opinion states "Insofar as chapter 306A provides there shall be no direct access to a new highway we think it is a proper exercise of the police power * * *", if by this is meant that the chapter distinguishes between the old and the new, in my judgment such a contention is merely a thought read into the chapter, a thought that is merely an attempted distinction between the instant case and our decisions in Iowa State Highway Comm. v. Smith, 248 Iowa 869, 82 N.W.2d 755, and Wilson v. Iowa State Highway Comm., 249 Iowa 994, 90 N.W.2d 161. The majority opinion recognizes this fact when it states: "The commission contends the Smith and Wilson precedents have no application here because plain-

tiffs never had a right of access to the new highway, * * *. The authorities amply support such contention." It should be noted that the authorities cited do not include any Iowa decisions. Certainly no such distinction can be found in chapter 306A, and, if the majority opinion seeks to rest upon legislative edict, it must be judicial, not legislative.

Assuming, and I think rightfully so, that no legislative distinction exists between the taking of a new right of way and the conversion of an existing one, it is my firm conviction that the majority opinion is unsound and contrary to all of our previous highway condemnation cases, and there are many of them.

This case involves the condemnation of real estate for highway purposes, concededly a taking of property. Section 4.1, paragraph 8, Code of 1958, defines land—real estate, as follows: "The word 'land' and the phrases 'real estate' and 'real property' include lands, tenements, hereditaments, and all rights thereto and interests therein, equitable as well as legal."

We said in Liddick v. Council Bluffs, 232 Iowa 197, 221, 5 N.W.2d 361, 378: "Keeping in mind that property is not alone the corporeal thing, but consists also in certain rights therein created and sanctioned by law, of which, with respect to land, the principal ones are the right of user and enjoyment * * * and lesser ones, included in the right of user and enjoyment, are rights of access, light, air, view, * * *, it is clear that the corporeal thing is taken, the property is taken, pro tanto, when any one or more of these rights are taken, of which property consists. And when the right of access to and from the tangible, corporeal thing, by way of adjacent streets, is taken, thereby preventing the use and enjoyment of the tangible property, that tangible property, itself, is taken."

In Anderlik v. Iowa State Highway Comm., 240 Iowa 919, 924, 38 N.W.2d 605, 608, we say, "The basis of the Liddick decision is that real property consists not alone of the tangible thing but also of certain rights therein sanctioned by law, such as rights of access (ingress and egress), light, air and view, and when such rights are destroyed or substantially impaired * * * there is at least a partial taking of the property in the constitutional sense. The record here shows such an impairment of these rights of plaintiffs."

In Hansell v. Massey, 244 Iowa 969, 972, 59 N.W.2d 221, 223, we say, "His right of access is property which cannot be taken from him without compensation."

The cases above-cited and others of similar import are not even mentioned in the majority decision. In its brief and argument appellant brushes them aside with the statement that they deal with the conventional type highway and are not applicable here. It is true, they do deal with the conventional or service type highway, and antedate chapter 306A, but quaere?

Then we have two cases involving chapter 306A. In Iowa State Highway Comm. v. Smith, supra, 248 Iowa 869, 876, 82 N.W.2d 755, 759, we say, "In accordance with what is said in Wegner v. Kelly, supra, * * * and other authorities above cited [including the Liddick and Anderlik cases, both supra], we hold defendants are not entitled to access to their properties at any and all points * * *. But they are entitled to reasonable access * * * to their properties and the public may not deprive them thereof without just compensation."

In Wilson v. Iowa State Highway Comm., 249 Iowa 994, 1006, 90 N.W.2d 161, 168, we quote from the Smith case, supra, as follows: " '* * * an abutting owner may make only such use of his right of access as reasonable regulations permit' " and then say, "Such regulations would not constitute a 'taking' entitling the owner to compensation therefor unless it deprived the property of reasonable access to the highway."

An attempted distinction between these two decisions and the instant case is, as above stated, based upon the theory of "a new highway."

While not mentioned in the majority decision but discussed in appellant's brief is the question of the "abutting owner." It is therein said:

"Just as it follows logically from the purpose of a 'land service' road that there must be created in the abutting owners a right of direct access, so it follows logically from the purpose of a 'traffic service' road that there need not be created in the abutting owner a right of direct access. * * *

"To hold that there is created in the appellees a right of direct access from their abutting property would be to hold that a right of access which never before existed would be created by

the filing of the action to condemn and then, *eo instanti,* would be extinguished by the actual determination of the action."

If we assume that a right of access is a creation of the condemnation proceedings being commenced, then it seems to me that it logically follows that in both instances the right is created, even though in the controlled-access type it is, as stated in the brief, *eo instanti* wiped out. It might materially affect the damages but not the property right. However, the fallacy of this argument is that the right of access is something created, given to the owner by the condemnation. If this be true, then we must repudiate section 4.1, paragraph 8, Code of 1958, and all of our prior highway decisions; they all say that "right of access" is a right inherent in the ownership of land and is a right protected under section 18, Article I of our Constitution. It is true that under chapter 306A a right of access does not exist after the establishment of the highway while under the conventional type of highway all of our decisions say such right does exist. The distinction lies in the fact that in the controlled-access type the right of access is taken—is condemned; while in the conventional type the right of access remains intact, only the corporeal thing, the land, being taken. It is my firm conviction that, whether we are dealing with an old or new right of way; with a conventional type or a controlled-access type of highway, the rights of the owner, of the land through which, or along which, the highway passes, in his land are identical. What remains to him, after the condemnation, depends entirely upon what is condemned or taken, and that likewise must his right to compensation be so determined.

The majority opinion places great stress upon the fact that chapter 306A is a police power enactment. Granting that it is, such is not an answer to the question involved here nor is it a sound basis for the decision. "Eminent Domain" is the taking of private property for a public use for which compensation must be given. "Police Power" controls and regulates the use of the property for the public good for which no compensation need be made.

In City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1107, 184 N.W. 823, 828, 188 N.W. 921, 23 A. L. R. 1322, it is said: "This is not to say that, under the guise of police power,

the state may do or authorize that which the Constitution expressly or impliedly forbids; * * *. Among those prohibitions is the one which makes private property immune against seizure or condemnation * * * without [just] compensation. * * * There is in such cases 'no divesting of property rights * * * and the regulation to which the exercise of such rights is thereby subjected is not prevented * * * by the * * * Constitution.' "

In Warren v. Iowa State Highway Comm., 250 Iowa 473, 478, 93 N.W.2d 60, 63, we say, "The State has clearly declared here [chapter 306A] its intention to proceed through its police powers. This is not a complete answer to plaintiff's contention, however; the exercise of the police power must be a proper and reasonable one, and must not amount to a taking of property without due process of law."

In order to deem the instant case a proper exercise of the police power or regulation the majority opinion assumes the major premise that no right ever existed in a new highway before, which I have already discussed, thus seeking to escape the necessity of making just compensation. To deny is not to regulate and is not a valid exercise of the police power. Central States Theatre Corp. v. Sar, 245 Iowa 1254, 66 N.W.2d 450.

To hold, as does the majority opinion, that the "establishment of a new controlled-access highway * * * does not deprive the owner of a right of access to his property from the new highway and he is entitled to no compensation for the claimed taking of a right that never existed" is based upon fallacious assumptions and is not sound law. It is not based upon a fact question as to whether, in each particular case, the denial of access is reasonable or unreasonable. See the Smith and Wilson cases, supra. It announces a rule of law applicable in all cases where a new right of way is acquired for such a type of highway without regard to whether or not it is in fact a "taking" or a "regulation." If appellant's requested instruction can be said to embody this idea, then in my judgment the trial court was correct in refusing same.

I realize that the majority opinion cites and relies upon very respectable authority and that I may be very presumptuous in not going along with it as does the majority, however, I am so firmly convinced that, under our decisions, the entire case is

built upon assumptions directly in conflict with such decisions that I am unable to accept them. I do not wish to be considered as contending that the State may not, by reasonable regulations, deprive a landowner of access to a highway, old or new, touching or crossing his land, without having to make compensation therefor. In fact, the instant case might well be one of reasonable regulation but the requested instruction and the majority decision go far afield from that proposition. It in effect abrogates the protection guaranteed to an owner of property by the State Constitution. If this is sound, what will the next step be?

II. The opinion also holds the refusal to give a requested instruction, relative to the purpose for which certain cross-examination of expert witnesses was received in evidence, to be reversible error. Both sides introduced the same type of evidence. While I feel that such an instruction might well have been given I fail to see where any prejudice resulted from not giving and certainly would not reverse on this account.

I would affirm the trial court.

LARSON, C. J., and PETERSON, J., join in this dissent.