LAURENCE KIGER, appellee, v. ARLEY MEEHAN, appellant.

No. 50541.

MARCH 6, 1962.

748

Mason & Stone, of Mason City, for appellant.

Senneff & Pappas, of Mason City, for appellee.

THOMPSON, J.—Plaintiff's petition at law, asking damages of the defendant because of alienation of the affections of plaintiff's wife was filed on July 29, 1960. The defendant filed his answer, in substance denying all the material allegations of the petition. Trial commenced on February 13, 1961, and resulted in a verdict for the plaintiff in the sum of $5600. Judgment was entered on the verdict, defendant's motion for a new trial was denied, and the defendant brings this appeal, assigning eight errors.

I. The first error assigned raises the issue of sufficiency of the evidence. The defendant contends his motion for directed verdict should have been sustained. We need use no time or space in demonstrating that under these circumstances we must view the evidence in the aspect most favorable to the plaintiff which it will reasonably bear. Many authorities so hold. Another way of putting the rule is that if there is any substantial evidence supporting the submission of the case to the jury it was the duty of the trial court so to do, and we will not interfere. Some consideration of the evidence, especially that adduced by the plaintiff, becomes necessary at this point. It will not avail defendant if there is evidence contradicting or tending to refute that favorable to the plaintiff, if the latter has made a prima-facie case; and we shall not go into detail in relating what may be favorable to the defendant, at least in this division of the opinion.

Plaintiff's evidence shows these facts: Plaintiff is an electrician by trade. He and his wife were married in 1938. At times material here they lived in the small community of Portland, near Mason City. They got along fairly well until about October 1959. They have three children: Margaret Ann, age 20; Larry Jr., age 16; and Janet Kay, age 14. These ages are as of the time of the trial. Plaintiff's wife, Margaret, was a good housewife prior to the date last stated, cooking the family meals

and caring for the home. She and the plaintiff went fishing together, shopped together, occasionally went dancing and played cards together and went on picnics. In October 1959 Mrs. Kiger was first seen by plaintiff and his son in the company of the defendant. They were parked in a car on a road five or six miles southeast of Portland. Mrs. Kiger did not return home that day and about 9 or 9:30 p.m. plaintiff and Larry Jr. started to look for her. After considerable driving around they found her sitting in the front seat of a car belonging to plaintiff, with defendant's car parked nearby. Plaintiff went to the car, opened the door and said "What's going on here?" The defendant made no answer, but hastened to his own car and drove away.

There is a history of other meetings between Mrs. Kiger and the defendant, who is a bachelor farmer residing in the same community. Some of this comes from the plaintiff and the son, Larry Jr., and some from other witnesses. At times they were seen in a parked car, at other times in taverns. At least some of the meetings might be thought by reasonable minds to merit the term "clandestine". On one occasion, after the commencement of the lawsuit but before the trial, the parties were discovered by the plaintiff and Larry Jr., sitting in a parked car in the rear of a tavern in Mason City, and embracing. Plaintiff followed them when they drove away over a course which eventually ended at defendant's farm. There is a record also of an exchange of kisses.

Beginning in January and February 1960 Mrs. Kiger commenced to absent herself frequently from the family home, usually leaving in the late afternoon, "anywhere from 4:30 to 6:30." The plaintiff kept a record of the times she was absent, and on the trial was permitted to refresh his recollection as to the exact dates from this written memorandum, and it was introduced in evidence, over defendant's objection. Many of the dates showed Mrs. Kiger's absence until early morning hours. The plaintiff admitted he did not know where his wife was on these occasions. We shall comment on this feature of the case in a later division.

At one time the plaintiff asked his wife about her relationship with Meehan, and she replied that "Arlie Meehan was like a disease to her." While much of the evidence is denied, mini-

mized, or attempts are made to explain it, we think the plaintiff made a case for determination by the jury, and of course we cannot interfere with its determination of the facts.

 It is the defendant's contention that the burden was on the plaintiff to prove his case as he pleaded it; and there is no sufficient showing that he has done so. In Rank v. Kuhn, 236 Iowa 854, 857, 20 N.W.2d 72, 74, we stated the essential elements of these causes of action: "(1) wrongful conduct of the defendant (2) loss of affection or consortium and (3) causal connection between such conduct and loss. * * * An actual intent to alienate is not necessary if defendant's conduct is inherently wrong and tends to and does have the effect complained of." Citations and a discussion of the rule follow.

 We are also committed to the rule that, in the absence of evidence to the contrary, it is presumed husband and wife have affection for each other. Glatstein v. Grund, 243 Iowa 541, 545, 51 N.W.2d 162, 166, 36 A. L. R.2d 531, and cases cited. Likewise less proof is required to support an action of this sort against a stranger than against a parent. Glatstein v. Grund, supra, loc. cit. 243 Iowa 545, 51 N.W.2d 166. We think the defendant's conduct in associating with the wife of another, as plaintiff's evidence shows he did, was "wrongful conduct" within the meaning of the definition above. It would require the most liberal view of marital conduct to consider it otherwise.

There is evidence for the defendant that the plaintiff lost nothing in the way of wifely affection by defendant's conduct, because he did not have it before. But plaintiff's evidence is that he did have such affection and he is aided by the presumption set out above. Of course the causal connection between the wrongful conduct and plaintiff's loss must also appear. Here we enter into a field where direct proof is not possible. Mrs. Kiger denies having had any affection for the plaintiff, and so of course defendant's actions were not the cause of its loss. But we must consider that by plaintiff's evidence there was a loss of affections, and this loss commenced at the time of Mrs. Kiger's association with the defendant. A trier of facts might well infer there was a causal relation.

II. Assigned errors Nos. 2 and 3 are related, and will be considered together. Number 2 complains that the list of dates

when Mrs. Kiger was absent from home, as shown by the memorandum admitted into evidence, was inadmissible as "immaterial, the witness having no personal knowledge and we object to the use of Exhibit A [the paper showing list of dates] for any purpose."

That part of the objection "we object to the use of Exhibit A for any purpose" raised no real question. It did not point out why the defendant objected or what defect was claimed. The only real ground urged was that the memorandum was immaterial, because the plaintiff had no personal knowledge. By this we assume the point raised was that the exhibit was inadmissible because the plaintiff did not know whether Mrs. Kiger was with the defendant, and so it was not binding on him.

■ But we think it was admissible to show loss of affection. Certainly repeated absences from the home, especially in the evenings when the family would normally be together, might be acceptable proof on that point. We said in Glatstein v. Grund, supra, loc. cit. 243 Iowa 548, 51 N.W.2d 167, 36 A. L. R.2d 531: "In an action like this, though the husband [wife] is not a party, his [her] conduct, as well as defendant's, is directly involved. * * * Such evidence is not competent to show defendant in fact exerted a wrongful influence or said or did the things charged." Several authorities are cited.

■ The defendant did not ask the court to admonish the jury, at the time the claimed objectionable evidence was received, that it was admissible only for the limited purpose of showing Mrs. Kiger's affections had been alienated nor did he ask any instruction so limiting. However, he now predicates error on the giving of Instruction No. 10, which was in effect a stock instruction on circumstantial evidence, defining it and outlining the weight to be given to or denied it. It is his thought that if there was any circumstantial evidence in the case, it was only that above referred to in this division. He excepted to the giving of No. 10 because such an instruction had no proper place in the case; and "that under this instruction it would permit the jury to find that the defendant was guilty of some conduct which was either controlling or a substantial factor in the plaintiff's wife being absent from the house on the dates indicated in the testimony of the plaintiff when in fact he testified

that he did not make any such claim. *That the,* that his wife had been with the defendant on those dates; that it would permit the jury to speculate as to where she was, who she was with, and that the conduct of the defendant on those occasions was wrongful and a controlling or substantial cause in her being absent when there is no evidence in the record to support such an instruction \* \* \*." (Italics supplied.)

"Circumstantial evidence is evidence which does not directly prove the existence of a fact but merely gives rise to a logical inference that it exists." 31 C. J. S., Evidence, section 161, page 871. We are unable to agree with the defendant there was no circumstantial evidence in the case other than the list of dates on which the plaintiff's wife was absent from her home. Much of plaintiff's case depended upon circumstantial evidence, under the definition above quoted. That defendant's wrongful conduct caused plaintiff to lose his wife's affections could be established only by inference. His actions being shown, they were direct evidence of his wrongful conduct; but only circumstantial evidence that they caused Mrs. Kiger's affections to be alienated.

So an instruction on circumstantial evidence was proper, even though it might also apply to the list of dates when Mrs. Kiger was absent from her home. No claim was made that the definition of circumstantial evidence was not abstractly correct.

The real question becomes whether the exceptions taken to No. 10 were a sufficient request, or an alerting of the trial court to the need, for an instruction on the limited purpose for which the testimony here considered was received. In Lehman v. Iowa State Highway Commission, 251 Iowa 77, 86, 87, 99 N.W.2d 404, 409, an instruction was requested and refused. We held this reversible error. Other Iowa cases have found error in failing to give a limiting instruction when it was requested.

The general rule followed in this state, however, is that it is not error to omit giving such an instruction when no request is made therefor. McKenny v. Davis, 189 Iowa 358, 361, 178 N.W. 330, 331; Hall v. City of Shenandoah, 167 Iowa 735, 736, 149 N.W. 831, 832; Greenlee v. Ealy, 145 Iowa 394, 396, 397, 124 N.W. 166, 167. Some doubt may be thought to arise from the statement in Lehman v. Iowa State Highway Commis-

sion, supra, loc. cit. 251 Iowa 87, 99 N.W.2d 409, that "Broderick v. Barry, 212 Iowa 672, 237 N.W. 481, 75 A. L. R. 1530, * * * holds it was reversible error to fail to instruct, *apparently even in the absence of a request therefor,* as to the limited effect to be given evidence of admissions of the driver and of owners of an automobile." (Italics supplied.) However, an examination of the opinion in the Broderick case referred to fails to show whether a request had been made. In any event, we think the rule that a request must be made in order to predicate error on an omission to give a limiting instruction is well established in Iowa, and we adhere to it.

 The party who thinks a limiting instruction should be given owes a duty to the trial court to bring the point properly to its attention. Here, no request for admonition of the jury as to the effect of and limitations in the evidence was made when it was admitted; the contention was that it was inadmissible for any purpose. Nor was any request for a limiting instruction made, and no exceptions to the instructions as a whole raised the point of failure to give such an instruction.

Nor do we think the exceptions to the instruction on circumstantial evidence fairly raised the question. As we have pointed out, this instruction was a proper statement of the law; and there was considerable evidence, involving not only the testimony as to the dates Mrs. Kiger was absent from home when her whereabouts and companions, if any, were unknown, but other facts from which proper inferences might be drawn, which was circumstantial. The need for a limiting instruction, if such need existed, was not properly raised by an unclear exception to an instruction on another point which correctly stated the law. Fairness to the trial court required that the matter be brought to its attention in a more direct way. The plaintiff made it clear, in his testimony concerning the dates of Mrs. Kiger's absence, that he did not know where she was or whom she was with, and so of course that he did not claim she had been with the defendant at those times. However, we do not find it necessary to decide whether a limiting instruction, if requested, should have been given, since the record does not fairly raise the point.

III. The defendant assigns errors on the giving of Instructions Nos. 6, 7, 8 and 9, because they permitted the plaintiff to recover if the wrongful conduct of the defendant prevented a reconciliation, when no such issue was pleaded. Instruction No. 9 said:

"Evidence has been received as to alleged wrongful conduct of the defendant after Margaret Kiger left home on August 31, 1960. Unless or until the contrary has been shown by facts or circumstances proved, you would have the right to presume the possibility of a reconciliation between the plaintiff and his wife.

"If you find that such a possibility did exist, or would have existed except for the wrongful conduct, if any, of the defendant, after August 31, 1960, then you may consider such subsequent wrongful conduct, if any, and give it such weight as you deem it entitled to in determining the issues in this case."

The defendant insists that no issue of wrongful interference with reconciliation was pleaded. Plaintiff's petition alleged: "That by reason of the facts stated above, the plaintiff has been and still is wrongfully deprived by the defendant of the affections, comfort, society and aid of his wife * * *." It seems that a continuing deprivation of the affection of a spouse should be interpreted to mean not only an original loss but the prevention of reconciliation. It is true at the time the petition was filed the plaintiff's wife was still living in the same home with him; but there is substantial evidence of estrangement. The plaintiff had the right to attempt to regain his spouse's affections, companionship and society, and a wrongful interference with reconciliation is a piece of the same tattered cloth as the original wrongful acts causing their loss.

We hold that an allegation that the plaintiff "still is" deprived of the affections, comfort, society, and aid of his wife is sufficient to raise the issue of interference with reconciliation. Bradbury v. Brooks, 82 Colo. 133, 137, 257 P. 359, 361, says: "* * * the answer and the evidence of defendant went to show that an alienation by plaintiff's fault had taken place before the husband met the defendant. One of the effects of that evidence was to put * * * the possibility of reconciliation into the case." Pertinent language is also found in Scott v. Bontekoe,

252 Mich. 185, 186, 233 N.W. 215, 216: "The instruction contravened the rule that a husband and wife, although estranged, are entitled to full and free benefit of the possibilities of reconciliation, uninfluenced by the unjustifiable interference of an outsider; and that conduct with the tendency to continue the discord is an element of the wrong as well as that which produces the rift in the lute of matrimonial harmony."

We have examined the authorities cited by the defendant on this question and do not find them in point.

IV. Error is assigned on the amount of the verdict, which was for $5600. We find no merit in this assignment. There is no evidence of passion or prejudice on the part of the jury other than the amount of the verdict. The value of the affection and companionship of a wife, and the damage resulting to the husband from the wrongful deprivation thereof, are matters impossible of mathematical calculation. It is peculiarly the jury's function and responsibility to award what it deems just compensation. It is not impossible, of course, that a verdict in this class of cases might be so excessive as to require our interference; but we do not so find the amount returned here. In 27 Am. Jur., Husband and Wife, section 543, page 142, it is said: "All courts recognize the difficulty, if not the impossibility, of formulating any rule to measure loss of consortium and affections in money, and they recognize that a wide latitude must be allowed the jury for the exercise of judgment." We ourselves have said: "Damages such as may be awarded can but inadequately compensate for such a wrong; and for this reason, courts rarely, if ever, interfere with the measure meted out by the jury." Ruby v. Lawson, 182 Iowa 1156, 1161, 166 N.W. 481, 483. The entire question is discussed at some length in Glatstein v. Grund, supra, loc. cit. 243 Iowa 557, 558, 51 N.W.2d 162, 172, 173, 36 A. L. R.2d 531, 546.

V. Other errors assigned have been considered and we have found nothing therein requiring a reversal or calling for an extended discussion.—Affirmed.

All JUSTICES concur except BLISS, J., not sitting.